(109 App. Div. 670)

PEOPLE ex rel. BORGIA v. DOE et al. Election Inspectors.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

1. ELECTIONS—REJECTION OF VOTE BY ELECTION OFFICERS.

Const. art. 1, § 1, declares that no member of the state shall be disfranchised, unless by the law of the land or the judgment of his peers, and article 2, §§ 1, 4, point out the conditions precedent to a right to vote. By Laws 1896, p. 893, c. 909, though an elector's vote is challenged, his vote must be received; by Election Law, par. 15, p. 904, an arrest at the polls cannot deprive one of the right to vote; and Pen. Code, § 41k, makes it a misdemeanor to delay or obstruct an elector on his way to a polling place. *Held*, that a board of inspectors of an election district had no right to deny a qualified elector the right to vote merely because some one else had previously voted in his name.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, § 193.]

2. MANDAMUS—ELECTIONS—RIGHT TO VOTE.

Where a board of election inspectors wrongfully denied an elector the right to vote on the ground that another had voted in his name, his remedy was mandamus.

Appeal from Special Term, New York County.

Mandamus, on the relation of Philip Borgia against John Doe and others, as inspectors of election, to compel respondents to permit relator to vote at an election. From an order denying a motion for a peremptory writ, relator appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

A. S. Gilbert, for appellant.

H. Snowden Marshall, for respondents.

McLAUGHLIN, J. At a general election held November 7, 1905, the relator was denied the right to vote by the board of inspectors of the Twenty-Sixth election district of the Eighteenth assembly district of the city of New York, and he thereupon applied to the Special Term of this court for a peremptory writ of mandamus to compel such board to permit him to vote. His application was based upon an affidavit made by himself, which showed that he was a naturalized citizen of the United States, over 21 years of age; that he was naturalized more than 90 days prior to November 7, 1905; that he had resided in the state of New York more than one year prior to the general election held on that date; that for four months immediately preceding such time he had resided in the county of New York, and for the last 30 days in the Twenty-Sixth election district of the Eighteenth assembly district; that on one of the registration days provided for by law in the year 1905 he duly presented himself before the respondents, composing such board, and his name was duly registered as an elector, qualified to vote in such district at the general election held on November 7, 1905; that on such election day he appeared before the respondents, composing such board, for the purpose of voting; that they refused to permit him to vote, on the ground that some one else had previously thereto voted on his name. The facts set out in the affidavit were not controverted in any way. Notwithstanding that fact, the court at Special Term denied the application for the writ, and the relator has appealed.

The question presented is of so much importance that we think it should be considered and determined upon the merits (Matter of Fairchild, 151 N. Y. 359, 45 N. E. 943), notwithstanding such determination can, so far as the relator is concerned (the election having passed), accomplish no purpose except to prevent others being similarly deprived of their right to vote. The relator, upon the conceded facts, had a right to vote. Nevertheless he was prevented from doing so simply because some one else had fraudulently voted in his place. Section 1 of article 1 of the Constitution provides that no member of the state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers. This provision of the Constitution was violated, as well as another provision, which provides that:

"Every male citizen of the age of twenty-one years who shall have been a citizen for ninety days and an inhabitant of the state one year next preceding an election and for the last four months a resident of the county and for the last thirty days a resident of the election district in which he may offer to vote shall be entitled to vote at such election in the election district in which he shall, at the time, be a resident." Section 1, art. 2, of the Constitution.

The Constitution further provides, in section 4 of article 2, for the registration of voters, which registration shall be completed at least

10 days before the election. In pursuance of this section of the Constitution, chapter 909, p. 893, of the Laws of 1896, was passed, which provides the method for registration of voters in the city of New York.

The relator was duly registered; he was legally qualified to vote; nevertheless, he was prevented from doing so, not by the law of the land or the judgment of his peers, but by the simple fiat of the board of election inspectors. Argument is unnecessary to demonstrate that the board of election inspectors possesses no such power, because, if it did, elections would be little less than a farce, inasmuch as the power to determine who should vote would rest with such board. The inspectors of elections act only ministerially. They have no power, except such as is conferred upon them by statute, and, when a person legally qualified offers to vote, they must receive his vote. If it is asserted that he is not qualified to vote, then the only way to prevent his doing so is to challenge it, and in that case if the would-be voter insists upon his right to vote, and is willing to take the oath prescribed by statute (subdivision 2, par. 108, c. 909, p. 958, Laws of 1896), his vote must be received. People ex rel. Smith v. Pease, 27 N. Y. 45, 84 Am. Dec. 242; Goetcheus v. Matthewson, 61 N. Y. 420; People ex rel. Stapleton v. Bell, 119 N. Y. 175, 23 N. E. 533; People ex rel. Sherwood v. Board of Canvassers, 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646; People v. Hochstim, 76 App. Div. 25, 78 N. Y. Supp. 638, 986.

Even an arrest at the polls cannot deprive one of the right to vote. He must be afforded the privilege of voting before he is removed from the polling place (paragraph 15, Election Law), and any person who "willfully and unlawfully obstructs, hinders or delays or aids or assists in obstructing or delaying an elector on his way to an election or polling place, or while he is attempting to register or vote, is guilty of a misdemeanor." Section 41k, Pen. Code. The whole policy of the state now is and ever since its organization has been to accord to every qualified elector the fullest and freest opportunity to vote, and of this opportunity he cannot be deprived on election day because the board of inspectors has permitted another person to wrongfully and unlawfully impersonate him before he offers his vote. If another person has voted on his name, he may nevertheless vote, and the inspectors must receive his ballot, notwithstanding the wrong previously committed by another. The Court of Appeals, recognizing this right on the part of an elector, in Goetcheus v. Matthewson, supra, said:

"The law of New York, wisely as we think, has largely left the right to vote, as far as the proceedings on election day are concerned, to the judgment and conscience of the elector. Most of the questions that may tend to excite a momentary irritation caused by the challenge are disposed of for the time being by his oath. If he willfully swears falsely, he is liable, on conviction, to a suitable punishment. If he is disqualified from voting, the error may be rectified, so far as it occasions harm, by an appropriate judicial proceeding."

And further commenting upon it in People ex rel. Stapleton v. Bell, supra, the same court said:

"If a person claiming the right to cast his ballot shows himself to be qualified to do so by the application of statutory tests, he should not be deprived

of that right by any action of the authorities, state or local. Ample means are provided for holding him for punishment, if believed and charged to be guilty of a violation of the law, and ample means exist for the rectification of the result affected by his acts."

If one could be deprived of the right to vote as the relator here was, then the policy of the law is destroyed, and the statutes which have been passed to safeguard the elector's right to vote serve no purpose whatever.

But it is said a writ of mandamus was not the proper remedy. If not, it is difficult to imagine what remedy the relator could have invoked which would have secured to him the right guarantied by the Constitution. We think it was the proper remedy, and this would seem to follow when the nature of the writ is considered. A writ of mandamus has been defined to be a command issuing from a court of law of competent jurisdiction in the name of the state or sovereign, directed to some inferior court, officer, corporation, or person, requiring them to do some particular thing therein specified which appertains to their office or duty. Am. & Eng. Enc. of Law (2d Ed.) vol. 19, 716. And it will lie whenever a party has a clear legal right to demand the performance of a specific duty and there is no other adequate remedy. Am. & Eng. Enc. of Law (2d Ed.) vol. 19, 725, and cases cited.

Here the relator had a constitutional right to vote, and it was the duty of the board of inspectors to recognize that right and permit him to do so. The fact that some one else had voted upon his name was of no importance when he himself offered to vote. All that then remained for the inspectors to do was to satisfy themselves that he was a qualified elector and had been properly and legally registered. These facts were not denied, and therefore the respondents, in refusing to permit the relator to vote, deprived him unlawfully of his constitutional right of franchise. They violated the duty which was placed upon them by the statute, and the only way the relator could protect his rights and compel them to perform the duty resting upon them was by writ of mandamus. The writ should have issued, and for that reason the court erred in denying the relator's application.

The order appealed from must therefore be reversed; but, as the issuance of the writ would accomplish no purpose, election day having passed, we do not direct that it issue. All concur.