### In re MORGAN, State Superintendent of Elections.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. APPEAL AND ERROR—DECISIONS REVIEWABLE—QUESTIONS OF PUBLIC INTEREST.

　　The Supreme Court will consider on appeal the constitutionality of a law (General Election Law, § 31, Laws 1896, p. 909, c. 909, as amended by Laws 1905, p. 1718, c. 675) relating to the striking of an elector's name from the registration list, and vitally affecting future elections, though by the lapse of time the question is academic as to the party litigant.

2. ELECTIONS—REGISTRATION—PRESUMPTIVE EVIDENCE.

　　Const. art. 1, § 1, provides against disfranchisement "unless by the law of the land." Article 2, § 1, specifies the qualifications of electors, and

section 4 provides for the registration of voters. General Election Law, § 31 (Laws 1896, p. 909, c. 909, as amended by Laws 1905, p. 1718, c. 675), provides that an affidavit by a deputy state superintendent of election that he had interrogated one of certain persons connected with a house as to an elector's residence therein, and was informed that such elector did not reside at said premises, shall be presumptive evidence against the right of the elector to register from such premises. *Held*, that the section is not unconstitutional because it prescribes what evidence of the fact shall be presumptive.

**3. SAME—STRIKING ELECTOR'S NAME—SUFFICIENCY OF NOTICE—MAILING NOTICE.**

In a proceeding to strike an elector's name from the registration list, service of notice by mail, addressed to such person at the address appearing in the registration list, as authorized by General Election Law, § 31 (Laws 1896, p. 909, c. 909, as amended by Laws 1905, p. 1718, c. 675), is sufficient.

**4. SAME—DISCRIMINATION AS TO LOCALITIES.**

Const. art. 1, § 1, provides against disfranchisement "unless by the law of the land." Article 2, § 1, specifies the qualifications of electors, and section 4 provides for registration, making distinctions as to cities having more than 5,000 inhabitants. General Election Law, § 31 (Laws 1896, p. 909, c. 909, as amended by Laws 1905, p. 1718, c. 675), provides that within the Metropolitan elections district an affidavit by a deputy state superintendent of election that he had interrogated some person connected with a certain house, and was informed that an elector registered from such house did not reside therein, shall be presumptive evidence against the right of the elector to register therefrom. *Held*, that the section was not unconstitutional, because only applicable within the Metropolitan elections district.

**5. SAME—DEPRIVATION OF FRANCHISE.**

The section further provides that the presumptive evidence arising from the affidavit may be rebutted only by the oral testimony or affidavit of the elector. *Held* unconstitutional, as shutting out competent evidence.

Appeal from Special Term, New York County.

Proceeding by George W. Morgan, state superintendent of elections for the Metropolitan elections district, to strike from the register of electors the name of John P. Rolle. From an order directing the inspectors to strike the name, Rolle appeals. Order reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

R. Burnham Moffat, for appellant.

Julius M. Mayer, Atty. Gen. (Danforth E. Ainsworth, on the brief), for respondent.

CLARKE, J. The application to the Special Term to strike the name of the appellant from the roll of registered voters for the general election to be held in November, 1905, was made by the respondent, alleging that he was an elector in the city and county of New York, and that he was the state superintendent of elections for the Metropolitan elections district, duly appointed, qualified, and acting, and, as such, empowered by law to appoint deputies, and empowered and charged by law with the duty of investigating, and causing and directing said deputies to investigate, all questions in relation to the registration of voters. The application further alleged that the name of the appellant appeared on the register of electors in the Second election district of the Fifteenth assembly district, and that he had caused an examination to be

made by one of his deputies in regard to the registration of the appellant, and said appellant's qualifications as an elector. The deputy made an affidavit that he had made an investigation of the qualifications of the appellant as an elector, and the questions relating to his right to be registered and to vote, and in the course of such investigation deponent did personally visit and inspect the premises 318 West Forty-Fourth street, being the premises claimed by the said appellant as his residence, and the address from which the said appellant registered in the Second election district of the Fifteenth assembly district of the county of New York for the above election referred to, and did personally interrogate an inmate, house dweller, keeper, caretaker, owner, proprietor, or landlord thereof or therein as to said elector's residence therein or thereat, to wit, caretaker, and that deponent was informed by one or more of said persons, namely, Annie Smith, that she was acquainted with and knew the persons residing therein or thereat, and that appellant did not reside at said premises 30 days before election, or on October 8, 1904, or at the time of his registration, as aforesaid. The respondent upon said papers asked for an order to show cause why the name of the said appellant should not be stricken from the register, which order having been granted, upon the return thereof the Attorney General read the above referred to petition and affidavits and rested. The attorney for the appellant made certain objections to the proceedings, and moved that they be dismissed, which being denied, the appellant offered to prove by the oral testimony of appellant's wife that the appellant was and had been absent from the city of New York for the past week; that a copy of the moving papers herein was, during his absence, received at his house through the mail, but had not reached the appellant, for the reason that he was too far away from New York on a business trip to be reached. He further offered to prove by her that the appellant was a duly qualified elector of the county of New York, and entitled to vote from 318 West Forty-Fourth street. The Attorney General objected to the proposed evidence, not upon the ground that it was presented in the form of an offer (conceding, for the purposes of the record, that the facts stated would be testified to by the witness offered), but specifically objected, under the provisions of section 31 of the general elections law, to the court receiving the testimony. The objection was sustained, appellant excepting, and the court thereupon made an order directing the inspectors of elections of the said district to convene as a board of registration, and strike the name of the appellant from the register. From that order, this appeal is taken.

Section 31 of the general elections law, being chapter 909, p. 909, of the Laws of 1896, as amended by chapter 675, p. 1718, of the Laws of 1905, provides as follows:

"Sec. 31. Adding and erasing names on register. If the board of inspectors at any meeting for the registration of electors shall have neglected or refused to place upon the register of electors, the name of any person who is entitled to have his name placed thereon, application may be made to the Supreme Court or any justice thereof, in the judicial district in which such election district is located * * * on a day at least two days prior to the Saturday before any election, for an order to place such name upon the register of electors and such court, justice or judge may upon sufficient evidence and

upon such notice * * * as the court, justice or judge may require, order such inspectors to convene as a board of registration on the second Saturday before such election and to add the name of such person to such register of electors. * * * In case the name of any person, who will not be qualified to vote in such election district at the election for which such registration is made, shall appear upon such register, application may be made in like manner by any elector of the town or city in which such election district is located, to any court, justice or judge hereinbefore designated, for an order striking such name from the register, and such court, justice or judge may, upon sufficient evidence and upon such notice of not less than twenty-four hours to the person interested, of such application as justice or judge may require, served either personally or by depositing the same in the post office, addressed to said person by his name and at the address which appears in the register certified by the inspectors of election, proceed to convene the board of inspectors as provided herein for adding a name and may order such board to strike such name from such register of electors and such register shall be corrected accordingly."

Until 1905 said provision as to adding and striking names from the registration lists was the general law of the state, applicable to cities and villages alike. The striking of a name from the list was a judicial act, and sufficient evidence of the facts establishing the improper registration of the proposed voter was required. In this department it had been held that an affidavit setting forth that the affiant had interviewed some unnamed person at the address appearing upon the register of voters, and had been informed that no person of the name registered resided at or was known at the said address, and that therefore the affiant upon information and belief averred that such person was not a duly qualified elector entitled to vote at the ensuing election from said address, was not sufficient evidence of the fact, and a large number of proceedings based upon such papers presented to the court prior to the election of 1904 were therefore dismissed.

The Legislature of 1905, by chapter 675, p. 1718, of the Laws of that year, amended said section 31 by adding the following:

"In all applications in the Metropolitan elections district to strike the names of electors from the register under this section on affidavits by the state superintendent of elections for the Metropolitan elections district, or any of his deputies, when duly directed by the state superintendent of elections for that purpose, that investigation was made by them pursuant to the provisions of section 6 of the Metropolitan elections district law, and that the affiant did visit and inspect the premises claimed by the elector as his residence, and did interrogate an inmate, house dweller, keeper, caretaker, owner, proprietor or landlord thereof, or therein, as to the said.elector's residence therein or thereat, and that the said affiant was informed by one or more of said persons, naming them, that they were acquainted with and knew the persons residing therein or thereat, and that the elector did not reside at said premises thirty days before election, shall be presumptive evidence against the right of the elector to register from such premises, which may be rebutted only by the oral testimony under oath, or affidavit of the elector whose name is sought to be stricken from the register."

It is admitted upon this proceeding that the papers upon which the application was made fully comply with the provisions of the aforesaid amendment, and that, if the said amendment is constitutional, the order appealed from was required by the statute. The sole question involved in this appeal is the constitutionality of said amendment, and, although the said election has long since passed, and therefore our decision can

have no effect upon the rights of the appellant at said election, both sides urge a consideration by this court of a public question vitally affecting the conduct of elections in the future. Although in one sense academic, such considerations have moved both this court (People ex rel. Borgia v. Doe, 109 App. Div. 670, 96 N. Y. Supp. 389) and the Court of Appeals (Matter of Fairchild, 151 N. Y. 361, 45 N. E. 943) to consider and determine cases involving the election laws, although the immediate necessity therefor has passed away. The learned Attorney General, with characteristic frankness, has stated to the court that in his opinion the order appealed from should be reversed, upon the ground that, although the court below felt bound to follow the literal wording of the statute, and therefore declined to receive competent common-law evidence of the fact of appellant's residence and qualifications as a voter, that in the opinion of the Attorney General such evidence should have been admitted. He asks us, however, to pass upon the questions raised.

The Constitution of the state provides, in section 1 of article 1, "that no member of this state shall be disfranchised, * * * unless by the law of the land." Section 1 of article 2 provides what shall be the qualifications of electors. Section 4 of the same article provides as follows:

"Laws shall be made for ascertaining by proper proofs the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters; which registration shall be completed at least ten days before each election. Such registration shall not be required in town and village elections except by express provision of law. In cities and villages having 5,000 inhabitants, voters shall be registered upon personal application only; but voters not residing in such cities or villages shall not be required to apply in person for registration at the first meeting of the officers having charge of the registration of voters."

So that it appears by the organic law of the state that a differentiation is made as to the different parts of the state in the method of ascertaining the rights of citizens to exercise the franchise.

Under the provisions of the Constitution, and from time to time, as necessity has arisen, laws have been passed by the Legislature for the purpose of insuring an honest vote and a fair count. In a great city, containing at all times a large transient population, the opportunity of fraud in elections, in the absence of legal restraint, is great. To such an extent was this realized that, long prior to the passage of the general election law, elections in the city of New York were controlled by the provisions of the consolidation act; provisions differing from those in other parts of the state, and careful and minute in their particularity as to all the manifold details of the elections. The general election law to-day has different requirements in cities where large numbers of people are massed, and for rural districts where almost everybody is known to the officials. The purpose of the law has always been to insure the honesty of the elections, and not to disfranchise any legal voters; and the acts governing the elections must be approached with a view of ascertaining what were the conditions existing at the time of the enactment of the law, what were the evils aimed at, and then whether the proposed remedy was proper. The propriety of the application to a justice at Special Term to strike the name of an alleged illegal

voter from the registration list was expressly approved by the Court of
Appeals in Matter of Goodman, 146 N. Y. 289, 40 N. E. 769. The
amendment under consideration does not offend against any constitu-
tional provisions, state or national, in the following particulars:

First. That it changes a rule of evidence prescribing what evidence
of a fact shall be presumptive.

In Howard v. Moot, 64 N. Y. 262 (chapter 19, p. 13, of the Laws of
1821), where, in regard to the title of a particular estate in land the
act authorized the perpetuation of testimony under the direction of the
Court of Chancery, and made the same prima facie evidence of the
facts set forth in the examination of witnesses, the objections consider-
ed by the Court of Appeals were—first, that the Legislature had no
power to authorize the testimony to be taken de bene esse without
giving any adverse party the right to cross-examination; and, second-
ly, the testimony as given in the deposition was mere hearsay, and
upon points on which hearsay evidence was incompetent. The court
held that rules of evidence are at all times subject to modification and
control by the Legislature, and changes thus made may be made ap-
plicable to existing causes of action and that an act declaring any cir-
cumstance of any evidence, however slight, prima facie proof of a
fact, is valid.

In Board of Commissioner of Excise v. Merchant, 103 N. Y. 143,
8 N. E. 484, of section 11 of chapter 628, p. 409, of the Laws of 1857
(the excise act), which provided that:

"Whenever any person is seen to drink in such shop or house * * * any
spirituous liquors or wines forbidden to be drank therein, it shall be prima
facie evidence that such spirituous liquors or wines were sold by the occupant
of such premises or his agent with the intent that the same should be drank
therein."

The court said:

"To make drinking the liquor in such a place and under such circumstances
prima facie evidence of an illegal sale to the person drinking, violates no con-
stitutional guaranty. * * * The general power of the Legislature to pre-
scribe rules of evidence and methods of proof is undoubted."

In People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep.
498, the court had under consideration chapter 448, p. 758, of the Laws
of 1885, which provides that certain conveyances of land, sold for
nonpayment of taxes by the Comptroller, after having been recorded
two years, should six months after the act took effect be conclusive
evidence that all proceedings had been regular. "And all other convey-
ances * * * heretofore or hereafter executed, shall be presump-
tive evidence of the regularity of all the said proceedings, * * *
and shall be conclusive evidence thereof from and after the expira-
tion of the two years from the date of the recording such other convey-
ances." The court held such act constitutional, as did the Supreme
Court of the United States in 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed.
392.

In People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep.
668, the act under consideration was chapter 377, p. 475, of the Laws
of 1887, as amended by chapter 181, p. 242, of the Laws of 1888,
the so-called "Bottling Act." The portion of the act under considera-
tion was that which provides that the having possession by any junk

dealer or dealers in second-hand articles of the kinds of marked bottles or kegs specified, without the written consent of the owner of such mark, should be presumptive evidence of the unlawful use, purchase, and traffic in such bottles. This was a criminal prosecution, and the appellants claimed that the provision above cited was unconstitutional, as an invasion by the Legislature of the domain of the judicial branch of the government. The court held that the power to enact such a provision was founded upon the jurisdiction of the Legislature over rules of evidence, both in civil and criminal cases, and, citing many authorities in this and other states, held the act good.

So far, then, as the statute under consideration provides that certain evidence shall be presumptive, it is not violative of any constitutional provisions. The evil aimed at is illegal registration. People who register from places where they do not reside, under names which do not belong to them, cannot be expected to put in an appearance until election day, when they present themselves at the polling place to deposit their fraudulent vote. Service upon them by mail, addressed to their residence as given in the registration lists, is the only possible way of giving notice. If they are there, the notice will be received. If the notice is not received, that is some evidence that the alleged elector does not reside at the address given. So in regard to statements made by the caretaker or other person in charge of a house to a sworn officer, whose duty it is by law to investigate and require true answers from such person to such questions as may be put to him touching the registration of any elector, the affidavit of such sworn officer, giving his information and the source thereof, as to the fact of the nonresidence of the registered elector, seems a reasonable provision of law, and enough by way of presumptive evidence to put the alleged elector to his proofs in support of his right to vote.

Second. The further point is taken that the rule of evidence is unconstitutional because it does not apply to the whole state, but is confined to the Metropolitan elections district. But in Howard v. Moot, 64 N. Y. 262, the act provided for the taking of the testimony of three persons named therein in regard to the title of one estate. Nothing could well be conceived as more restrictive than that, and yet the Court of Appeals found no objection thereto, and declared the act constitutional. And in People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498, the provision in regard to the effect of the conveyance on record as presumptive or conclusive evidence, as the case might be, was especially confined to the 15 counties of the state in the forest reserve, and the Court of Appeals held the act constitutional, and the Supreme Court of the United States likewise sustained it. The rule as to equality in the application of a law is well stated in Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578. In that case the plaintiff in error had been convicted of murder in the first degree, and upon his appeal to the Supreme Court of the United States he raised the point of the constitutionality of the Missouri statute, which provided that in a capital case, except in cities having a population of over 100,000 inhabitants, the state would be allowed 8 peremptory challenges to jurors, and in such city 15. He was indicted and tried in St. Louis, a city of over 100,000 inhabitants, and he

alleged that by reason of such provision of law he was denied the equal protection of the laws enjoined by the Fourteenth amendment of the Constitution of the United States. Mr. Justice Field, speaking for the court, said:

"The 14th amendment of the Constitution of the United States does not prohibit legislation which is limited either in the object to which it is directed or by the territory in which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

It has been held many times in this state that the Legislature had the power to discriminate between different parts of the state, by requiring things to be done in one section of the state which were not required in another, and to make acts crimes in certain portions of the state which were not crimes in the rest. Matter of Bayard, 25 Hun, 546; People ex rel. Kemp v. D'Oench, 111 N. Y. 359, 18 N. E. 862; Health Department v. Rector, etc., 145 N. Y. 32, 39 N. E. 833, 45 Am. St. Rep. 579; Tenement House v. Moeschen, 179 N. Y. 325, 72 N. E. 231, 70 L. R. A. 704, 103 Am. St. Rep. 910; People v. Stedeker, 75 App. Div. 450, 78 N. Y. Supp. 316; Whitely v. Terry, 83 App. Div. 198, 82 N. Y. Supp. 89. The last expression of the Court of Appeals is found in People ex rel. Armstrong v. Warden, etc., 183 N. Y. 223, 76 N. E. 11, wherein Judge O'Brien, speaking for the court, said:

"It seems to be well settled in this court and in the federal court that the equality within the contemplation of the 14th amendment does not necessarily include a territorial equality, and that legislation which, though limited in the sphere of its operations, affects alike all persons similarly situated within such sphere, is valid. People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707; Mallett v. North Carolina, 181 U. S. 589, 21 Sup. Ct. 730, 45 L. Ed. 1015; Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; Williams v. People, 24 N. Y. 405. Criminal laws are not necessarily unconstitutional, even if they bear unequally upon persons in different parts of the state. The evil which the Legislature may have in view in passing such laws may exist only in the great cities of the state, and have no existence in rural districts."

That language of the court is especially appropriate to the matter now under consideration, because everyone having to do with public affairs is aware of the difficulties which in a great city like New York surround the honest ascertainment of the will of the people at the ballot box. These difficulties have caused a long succession of legislative enactments, intended to secure the great desideratum, under a republican form of government, of an honest vote and a fair count. As Judge O'Brien said in the Armstrong Case, supra:

"It may be laid down as a general principle that legislation is valid which has for its object the promotion of the public health, safety, morals, convenience, and general welfare, or the preventation of fraud or immorality."

This legislation, adapted to the peculiar circumstances existing in this part of the state, was adapted to the promotion of the safety of the state in securing honest elections, and to the prevention of fraud at such elections.

Third. But there is one provision of the statute which cannot stand, and it seems to me can be lopped off without affecting the rest of the

statute. After providing what shall be presumptive evidence against the right of the elector to register from such premises, the statute proceeds:

"Which may be rebutted only by the oral testimony under oath or affidavit of the elector whose name is sought to be stricken from the register."

Such provision is clearly bad. In Howard v. Moot, supra, holding the provision good which made the deposition prima facie evidence, Judge Allen said:

"It may be conceded * * * that a law that should make evidence conclusive which was not so necessarily in and of itself, and thus preclude the adverse party from showing the truth, would be void, as indirectly working a confiscation of property or a destruction of vested rights."

And in Board of Commissioners of Excise v. Merchant, supra, holding that the drinking of liquors in certain places as prima facie evidence that they were sold by the occupant, Judge Earl said:

"A law which would practically shut out the evidence of a party, and thus deny him the opportunity for a trial, would substantially deprive him of due process of law. * * * So long as the Legislature in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defense, and to submit all the facts to the jury, to be weighed by them upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds."

And in People v. Cannon, supra, holding the provision as to the possession of the marked bottles prima facie evidence, Judge Peckham said:

"The accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence, and given such weight to the presumption as to it shall seem proper."

It is obvious that to provide that the presumption arising from the affidavit of the deputy superintendent of elections could only be rebutted by the testimony or affidavit of the registered voter himself would be violative of the rights of said voter. He might be sick; he might be away; he might not have received the notice. The provision cannot stand.

As competent common-law evidence was offered to establish the registered voter's right to remain upon the list, and was rejected under a provision of the law which is unconstitutional and void, the order should be reversed. All concur.