In re MORGAN, State Superintendent of Elections.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

ELECTIONS—SUPERINTENDENT—AUTHORITY OF GOVERNOR TO APPOINT.

Laws 1898, p. 1612, c. 676, amended by Laws 1899, p. 1030, c. 499, Laws 1900, p. 1504, c. 684, and Laws 1905, p. 1846, c. 689, created a Metropolitan elections district, extending over five counties, including four cities and numerous villages, and covering a portion of the state characterized by the density of its population and the migratory habits of a large portion thereof. It was provided that the governor should appoint a state superintendent of elections for such district, with power to appoint deputies,

who should oversee elections, investigate registration lists, lodging houses, and places where liquor was sold, and exercise certain executive powers for the prevention of election frauds. Const. art. 10, § 2, provides that city, town, and village officers whose election is not otherwise provided for shall be locally elected or appointed by the local authorities, and also that officers not provided for by the Constitution and officers whose office "hereafter may be created by law" shall be elected or appointed "as the Legislature may direct." *Held*, that the office created did not fall within the first clause of the constitutional provision, but was a new office for a valid purpose, falling within the second clause, and hence might properly be filled by appointment by the Governor.

. Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Application by George W. Morgan, as state superintendent of elections for the Metropolitan elections district, to strike from the register of electors the name of Patrick Furey. From an order granting a motion to strike the name, Furey appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRA-HAM, CLARKE, and HOUGHTON, JJ.

R. Burnham Moffat, for appellant.

Julius M. Mayer, Atty. Gen. (Banforth E. Ainsworth and Pliny W. Williamson, on the brief), for respondent.

CLARKE, J.   This is an appeal from an order made at Special Term granting an application made by respondent as state superintendent of elections for the Metropolitan elections district, striking the name of the appellant from the register of electors of the Thirty-Fourth election · district of the Thirty-Second assembly district of the county of New York, and requiring the board of registration of said district to convene for that purpose.   The application was made under section 31 of the election law (Laws 1896, p. 909, c. 909, as amended by chapter 675, p. 1718, of the Laws of 1905).   The application was based and the order made upon the affidavit of George W. Morgan, the state superintendent of elections, and the affidavit of Edson B. Hooker, a deputy state superintendent.   It is conceded that the moving papers conformed in all respects to the requirements of said section 31 of the election law, which have been considered in our opinion handed down this day in Rolle's Case.   Upon the return of the order to show cause, the appellant made various motions to dismiss the proceedings, all of which were overruled.   He now acquiesces in the disposition made by the court of all the points so raised by him, with the single exception stated by him in the record as follows:

"I now move to dismiss the application, on the ground that there is not sufficient or proper proof before the court upon which the order asked for may be granted.   The affidavit of the state superintendent and of his deputy are clearly insufficient, unless warranted by the provisions of section 31 of the general elections law, and those provisions, in so far as they declare that the affidavit of the state superintendent or of any of his deputies shall be received as evidence of the facts therein stated, are wholly ineffective for that purpose, for the reason that, as we insist, the so-called Metropolitan elections district law, which created the office of state superintendent and deputies, is void because violative of the provisions of section 2 of article 10 of the Constitution of the state of New York, which provides, among other things, that

all city, town, and village officers whose election or appointment is not provided for by such Constitution shall be elected by the electors of such cities, towns, and villages, or of such division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose."

His argument is that, if a stranger had made the affidavit as to his information, it would clearly have been insufficient as evidence, because strictly hearsay, and so, if the so-called office of state superintendent of elections for the Metropolitan elections district does not exist for the reason that it was beyond the constitutional power of the Legislature to create such an office, and if for the same reason there be no such officer as deputy state superintendent, then the affidavits which were read by the Attorney General did not fall within the amendment of 1905, and were as insufficient for the establishing of a prima facie case against defendant as if made by utter strangers to any public office. The only question, therefore, to be considered is whether Chapter 676 p. 1612, of the Laws of 1898, entitled "An act to create a Metropolitan elections district, providing for the appointment of a state superintendent therein and to prescribe his powers and duties," as amended by chapter 499, p. 1030, of the Laws of 1899, by chapter 684, p. 1504, of the Laws of 1900, and by chapter 689, p. 1846, of the Laws of 1905, was a lawful exercise of the legislative power.

The act provides in section 1 that:

"The counties of New York, Kings, Queens, Richmond and Westchester are hereby constituted a Metropolitan elections district for the purpose of all elections for state officers hereafter to be held therein."

The original act was passed at the extraordinary session of the Legislature in 1898. At that time Greater New York had been constituted, and a portion of Westchester county, though still belonging to the county of Westchester, had been annexed to the city of New York, so that voters residing in said annexed portion voted for borough and city officials of the city of New York, but for an assemblyman and a senator for the county of Westchester, and for justices of the Supreme Court in the Second judicial district. The county of Westchester has three incorporated cities, Yonkers, Mt. Vernon, and New Rochelle. The district so constituted, as its name imports, is in fact a Metropolitan district, with an enormous population and a considerable territory. It has peculiar features. Being composed of five counties, it has five sets of county officials. Having four cities, it has four sets of city officers. In one of its cities it has five sets of borough officers, and in the county of Westchester there is not only a full set of county officers, but there are as well numerous villages with their officials. The act further provided that the Governor should appoint an officer, by and with the advice and consent of the Senate, to be known as the "State Superintendent of Elections for the Metropolitan Elections District," for his term and the appointment of his successor, and for his removal from office, and the superintendent was authorized to appoint a chief clerk, secretary, and stenographer. The superintendent and each deputy appointed by him was empowered to exercise all the powers vested in a sheriff as a conservator of the peace. The superintendent was authorized to appoint not exceeding 400 deputy superintendents of elections

for the Metropolitan elections district, and administer or cause to be administered to them the oath of office, who were to have the qualifications of election officers, as required by the election law, except that they did not need to be residents of the election district in which they served. The term of such deputy expired on the 31st day of December of the calendar year in which he was appointed. These deputies were appointed upon the nomination of the political parties entitled to representation in local election boards. The superintendent was authorized to appoint without such nomination not more than 150 additional deputies. Such deputies, however, were not, as such, entitled to attend at the polling place on election day, but in all other respects had the same powers and the same duties as other deputies appointed under the act. The deputies, when directed by the state superintendent, or on their motion, or on complaint of any citizen of the state, may: First. Investigate all questions relating to registration of voters, and for that purpose shall have power to visit and inspect any house, dwelling, building, and lodging house or hotel within the Metropolitan district, and interrogate any inmate, house dweller, caretaker, keeper, owner, proprietor, or landlord thereof or therein as to any person or persons residing or claiming to reside therein or thereat. Second. Arrest any person without warrant who in his presence violates or attempts to violate any provision of the election law or the Penal Code relating to crimes against the elective franchise. Third. Execute warrants of arrest, and take into custody the person or persons named in such process. Fourth. Inspect and copy any book, record, paper, or document relating to or affecting the election and registration of electors. Fifth. Require every lodging housekeeper, landlord, or proprietor to exhibit his register of lodgers therein at any time to any such deputy. The superintendent or any deputy may call upon any person to assist him in the performance of his duty, and may call upon any public officer, who thereupon must, by himself or by his assistants, deputies, or subordinates, render the required assistance. He is given power to issue subpœnas to run throughout the Metropolitan elections district, and to examine under oath any person or persons whose presence before him, or before any of his deputies designated by him, in any matter pertaining or relating to the electric franchise. The superintendent may attend, and each deputy superintendent shall attend, on election day, the polling place to which it is assigned. The superintendent shall assign an equal number of deputies from every party at every polling place where such deputies are assigned by him. They shall be admitted at any time in any polling place, and within the guard rails thereof, and it is made their duty during the election to preserve order, and arrest any person violating, or attempting to violate, the election law, or any provision of the Penal Code relating to the elective franchise. It is made the duty of every landlord, proprietor, lessee, or keeper of a lodging house or hotel in the Metropolitan elections district to keep a register, in which shall be entered the names and residence, the date of arrival and departure, of their guests, and the room or rooms occupied by them, and such landlord, proprietor, lessee, or keeper shall make a sworn report, upon a blank to be prepared and furnished by the said superin-

tendent, 29 days before the election next ensuing, to him, which report shall contain the names of the lodgers, employés, and other persons living therein, with various details specified in the act. The superintendent may require of hotel keepers where liquor is sold, and persons other than the keeper and members of his family claim a voting residence therein, an affidavit of the holder of such liquor tax certificate, setting forth whether he and his building have conformed to, and do conform to, all the requirements of the laws, ordinances, rules, and regulations relating to hotels and hotel keepers; and he may require of the chief of police and the respective heads of the departments of buildings, fire, and health to make to him a report of the buildings in which liquor is trafficked in, specifying the character of the business, whether a hotel, restaurant, saloon, store, shop, booth, or other place, and, if the place be a hotel, whether the building and holder of the certificate conformed to all the laws, ordinances, rules, or regulations of the state or locality, including the police, building, fire, and health departments, ordinances, rules, and regulations in relation to hotels and hotel keepers. In any city within the Metropolitan elections district, the board of inspectors of each election district shall on each day of registration transfer to cards furnished by the Secretary of State a complete copy of the names of each person registered in their respective districts, together with all the answers made and information given by the person registered at the time of registering, which shall be delivered in a sealed cover to the police who shall deliver the same to the superintendent of elections at his office. The salary and compensation provided for shall be paid by the state. The state superintendent is required to make an annual report of the Governor, and has authority to make rules for the control and conduct of his deputies.

The appellant claims that this act violates the home rule provisions of section 2 of article 10 of the state Constitution. If the act does violate them, it is null and void, and this court would not hesitate so to declare. In my opinion, this act was a valid exercise of the legislative power under the last clause of section 2 of article 10 of the Constitution, which reads as follows:

"All of the officers whose election or appointment is not provided for by this Constitution and all officers whose office hereafter may be created by law, shall be elected by the people or appointed as the Legislature may direct."

The office of superintendent of elections for the Metropolitan elections district was not an office provided for by the Constitution, and his office was created by law after the adoption of the Constitution. He is not a county officer, because his jurisdiction extends over five counties of the state. He is not a city officer, because his jurisdiction is not coterminous with any city, but includes four cities. He is not a village official, because, while there are many villages within his jurisdiction, he is not confined to any one of them. There was, therefore, no local authority, city, county, town, or village vested with the power or authority to appoint such an officer. It was a new office. There were given to the state superintendent powers possessed by no other officer, and from no other officer were any powers taken by his appointment. No man was ousted of his office, lessened in his au-

thority, or deprived of his salary or compensation. His duties were confined to a single object—the discovery and prevention of frauds upon the elective franchise. The purpose evidenced in every line of the bill is to secure an honest election for a part of the state, where by reason of the density of its population and the migratory habits of a large portion thereof great difficulty has existed, and still exists, in convincing the people of the purity of the elections. By the terms of the statute the supervision was created for state elections. For such elections every inhabitant of the state is or ought to be interested in an honest election in every part of the state, for a fraudulent vote in one part of the state affects every other part. The purpose of the statute is obvious, the methods employed reasonable, the object aimed at commendable.

There is little use in considering in extenso the early cases upon the question of the creation of new civil divisions by the Legislature, because the rule to be applied has been authoritatively laid down, and there is no difficulty in applying it to the facts in this case. All the cases in this state were reviewed by Judge Vann in his opinion in People ex rel. Metropolitan Street Railway Co. v. Tax Commissioners, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674. He pointed out that People ex rel. Wood v. Draper, 15 N. Y. 532, People v. Pinckney, 32 N. Y. 377, Metropolitan Board of Health v. Heister, 37 N. Y. 661, Metropolitan Board of Excise v. Barrie, 34 N. Y. 657, People ex rel. McMullen v. Sheppard, 36 N. Y. 285, were all cases which involved the right to erect two or more separate independent municipalities into a new civil division, to authorize officials appointed by the state to perform the duties formerly discharged by local officers, although leaving the municipalities in full existence, and untouched in all other respects, and yet the acts were declared constitutional. The opinion proceeds:

"Acts authorizing state officials to construct public buildings, parks, and highways, the expense of which was to be paid locally, have been uniformly sustained, although the power to make such improvements had been previously vested in the local authorities, and it was urged that the transfer of the power was an encroachment on local self-government. People ex rel. McLean v. Flagg, 46 N. Y. 401; Astor v. Mayor of New York, 62 N. Y. 567; People ex rel. Kilmer v. McDonald, 69 N. Y. 362; People ex rel. Commissioners v. Board of Supervisors, Oneida County, 170 N. Y. 105, 62 N. E. 1092. To the next group may be assigned statutes which directly or indirectly authorize the appointment of local officers by state officials or the Legislature, or extended the terms of local officers already elected, or limited the power of local authorities in the appointment of local officers. Such legislation has been condemned as in manifest violation of home rule"— citing cases.

The statute at bar does not come within the class condemned as above pointed out, for the office is not local, and it not clearly so close to the line as in the first group of cases cited declared to be constitutional, because, as pointed out above, none of the powers and authorities of local officers are interfered with by this statute. Of the case strongly relied upon by the appellant (People ex rel. Bolton v. Albertson, 55 N. Y. 50) Judge Vann said that the act there under consideration, "which established a police district, consisting of a city with a police force already organized and three small patches of sparsely set-

tled territory—in all less than a mile square—was held unconstitutional as an obvious attempt to evade the restrictions relating to home rule, because it was designed for the city only, and the outside fragments could have been brought into the city if it was deemed necessary to extend police protection to them."

I am convinced, after careful examination of the cases, that this act cannot be condemned as unconstitutional. In the first place, there was no obvious intent to avoid the principle of home rule by the joining together of a small slice of sparsely inhabited territory to a city, and under that pretext to oust an already organized police force; but there was a joining together of five counties, in which conditions exist which warranted the legislation uniting them for proper administration of the election law, and an entirely new office was created, interfering with no other, and vested with powers possessed by no other, and impossible to be exercised by any one local officer throughout the district created.

If I am right in my conclusion that the act is constitutional, the order appealed from should be affirmed. All concur except INGRAHAM, J., who dissents.