(117 App. Div. 628)

## In re O'BRIEN.

### Appeal of DALESSANDRO.

(Supreme Court, Appellate Division, First Department. February 15, 1907.)

ELECTIONS—ENROLLMENT BOOKS—NAMES OF ELECTORS—STRIKING FROM BOOKS
—PROCEEDINGS—AFFIDAVITS—SUFFICIENCY.

    In proceedings to have the name of a certain person stricken from the enrollment book of an election district, an affidavit which shows that the person whose name it is sought to strike from the book is enrolled from No. 9 Mulberry street, and that affiant resides at that number, is insuffi-

cient to sustain the application, where it does not show whether the place named is a private house, boarding house, or tenement, or whether affiant is a janitor, lessee, or proprietor, or that he is in a position to know the facts.

Clarke and Ingraham, JJ., dissenting.

Appeal from Special Term, New York County.

Application by Dominick Dalessandro, for an order to strike the name of James O'Brien from the enrollment book of the Sixteenth election district of the First assembly district, in the county of New York. From an order denying the application, applicant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

James H. Hickey, for appellant.
Theodore Connoly, for respondents.

LAUGHLIN, J. In this case the affidavit, which asserts the facts positively, shows that the elector, whose name it is sought to strike from the enrollment book, enrolled from No. 9 Mulberry street, and that the affiant resides at that number; but it does not show whether it is a private house, or boarding house, or a tenement, or whether the affiant is the janitor, lessee, or proprietor, or that he is in a position to know the facts. We are of opinion that the rule laid down in the opinion in the Matter of the Application, etc., of Bernard Giles (argued and decided herewith) 102 N. Y. Supp. 851, should be applied here, and that the order should be affirmed upon the authority of the decision in that matter.

PATTERSON, P. J., concurs.

SCOTT, J. For the reasons stated in Matter of Giles, 102 N. Y. Supp. 851, I concur in result.

CLARKE, J. (dissenting). Although for many years the conduct of the general elections had been minutely prescribed by law, prior to 1898 the internal affairs of political parties, the conduct of primary elections, the qualifications of voters thereat, the election and appointment of governing committees, district, city, congressional, and state, and the composition and conduct of political conventions were governed by party rules and customs, and had not been put under control of statutory enactment. It is a matter of local political history that, in consequence of this untrammeled party government, widespread discontent had caused agitation looking towards legislative intervention. The complaints were based upon the fact that as an official ballot had been provided by the state, which alone could be voted at the election, and upon which alone could be placed the names of candidates regularly nominated by the party conventions, except through the cumbersome and expensive machinery of independent nominations, requiring a large number of nominators, whose nominee was deprived of whatever benefit was to be gained from regular party candidacy;

that the control of conventions was of the utmost importance. The party authorities had complete control of the party rolls. They could determine who should be admitted to the primaries and who kept out. There was thus concentrated in a few hands the important machinery of nomination for public office without fair submission to the will of the majority of the party voters. As a result of such agitation, the Legislature (by chapter 179, p. 331, of the Acts of 1898) passed the first general law governing primary elections. It is entitled, "An act in relation to enrollment for political parties, primary elections, conventions, and political committees."

The general scheme of the act, so far as enrollment was concerned, was to give every one an opportunity to enroll as a member of a party at the time that he registered as a voter for the general elections, on an official roll kept in the city of New York by the board of elections, and to provide that the right of a duly qualified voter to enroll should depend solely upon his own will, subject to challenge at the time of the enrollment; the questions submitted upon the challenge being prescribed in this act as follows:

"Are you in general sympathy with the principles of the [naming it] party?"

"Do you declare that you have not enrolled with, or participated in, the primary elections or conventions of, any other party since the first day of last year?"

"Is it your intention to support generally at the next general election, state or national, the nominees of the [naming it] party for state or national offices?"

This act provided for a supplemental enrollment during the month of December, following the registration, by which a voter who had not enrolled could, by filing with the board of elections a statement embodying the necessary declaration as to his party sympathies and intentions, be placed upon the roll if registered as a voter. It also provided that if after enrollment he should move into another election district between the 1st day of February and the 30th day before the annual primary day, upon filing an acknowledged statement of his change of residence, he could be transferred upon said rolls to the new district. It further provided that the party rolls so made up should go into effect on the 1st day of January following the days of registration, and remain in force until the 1st day of the following January, and it provided for official primary elections presided over by the inspectors of election belonging to the particular party, at which only duly enrolled party voters, and only those enrolled, could vote, and the machinery of such primary election was conformed to that provided for the general elections in the way of poll lists, watchers, canvassers, etc. This act was amended by chapter 111, p. 268, of the Acts of 1903. The provisions allowing a supplemental enrollment in a presidential year, or, of a voter coming of age after the last preceding general election, or allowing, when a voter had moved from one election district into another, a transfer to a new district, were repealed as to cities containing a population of 1,000,000 or over, and it was expressly provided, that:

"In such cities no elector shall be permitted to enroll as a member of a party except at one of the four regular meetings for registration."

Experience had demonstrated, as is usually the case, in regard to novel remedial legislation intended to apply to existing conditions, that evils unanticipated had grown up thereunder. That the opportunity given for supplemental enrollment and for change of enrollment consequent upon change of residence had not worked well. The individual's right to participate in his party government, therefore, was by this act of 1903, fixed as of the regular registration days for the regular general election, and the roll, as so fixed, lasted for the ensuing political year, and no one could be added thereto during said year. But the roll so made permanent in its turn gave opportunity for political manipulation and actual fraud. A roll made up in October of one year was to be used as the basis of the rights of the voters to participate in the primary election of September of the next year. The names once upon these rolls remained there whether the men whom the names represented were dead or alive or had removed from their election districts or even from the state. It is a fact, so well known, that members of a court residing in this city may take judicial notice of it, that a large portion of our population is extremely migratory in its habits. This condition was then presented: In districts of the town where a lively contest was proceeding for the control of the party machinery, which meant in many instances, the ultimate choice of public officials, a fixed roll was in existence upon which were the names of many men not representing legal voters, men who had either died or removed since the registration day, 11 months before. Experience has demonstrated in our local history that the opportunity afforded by such a state of affairs will be seized upon by ambitious and unscrupulous men, and that the names upon the list will be utilized to get votes in the box, whether the men putting them in the box are entitled to put them in or not. Fraudulent impersonation and ballot box stuffing have occurred. The public prints have reported such contests, and the courts have had to do with some of the results thereof,

Whereupon the Legislature attempted to remedy this evil. No one can examine carefully and thoughtfully the acts of the Legislature from year to year, touching the elections in this great city, without being impressed by the constant effort to insure an honest election and a fair count. The ingenuity of the evaders of the laws, passed with the purpose of procuring such result, is illustrated by the successive acts attempting to meet the new devices of the election rogues as they come to light. In order to meet this evil of a fixed official legalized primary roll made one year, to be voted upon the next, to be upon which, alone, permits a person to exercise a right of primary franchise, and which during such lapse of time becomes not a correct roll, but a roll containing numbers of names which cannot be lawfully voted upon, but which nevertheless are used to control the political affairs of the party, the Legislature passed chapter 350, p. 900, of the Laws of 1904, applicable only to cities containing a population of 1,000,000 or over, and provided as follows:

"If any statement in the declaration of any person, on the evidence of which his name was enrolled in the original enrollment book for any election district by the custodian of primary records, or if any entry opposite the name of any person in such enrollment book is false, or if any person enrolled

in such enrollment book has died, or has removed from or no longer resides in such election district, any elector of the assembly district in which such election district is located (provided such elector is himself duly enrolled with the same political party with which the person, as to whom the application is made, was enrolled) may present proof thereof by affidavit to the Supreme Court, or to any justice thereof, in the judicial district in which such election district is located, or to a county judge of the county in which such election district is located. And thereupon such court, justice, or judge shall make an order requiring the person against or as to whom the proceeding is instituted, unless he is shown to have died as hereinafter provided, to show cause before such court, justice, or judge, at a time and place specified in such order, why his name should not be stricken from such enrollment book. Such order shall be returnable on a day at least ten days before a primary election, and a copy thereof shall be served on the person against whom the proceeding is instituted . and on the custodian of primary records at least forty-eight hours before the return thereof, either personally or by depositing the same in the post office of the city in which such election district is located, in a postpaid wrapper or envelope addressed to the custodian of primary records at his office, and to such person by his name at his present address, if known, and otherwise at the address which appears in the enrollment book for such election district. If the person as to whose name the application is made is claimed to be dead, the order to show cause hereinabove provided for shall be directed to the custodian of primary records, and service thereof need only be made upon such custodian of primary records, such service to be made in the manner heretofore in this subdivision specified; but an order requiring the custodian of primary records to show cause why the name of a person claimed to be dead should not be stricken from the enrollment book shall not be made unless the affidavit presented to the court, justice, or judge by the elector has personal knowledge of the death of the person with respect to whose name the application is made and unless such affidavit is substantiated either by a certificate of the health department or by other competent evidence of such death. The custodian of primary records shall produce before the court, justice, or judge, the original enrollment declaration subscribed by the person against whom the proceeding is instituted.. The court, justice, or judge shall hear the persons interested, and if it appears by sufficient evidence that any statement in the declaration of the person against whom the proceeding is instituted, on the evidence of which he was enrolled by the custodian of primary records, or any statement opposite his name in the original enrollment book, is false, or that such person is dead or has removed from or no longer resides in the election district for which he is enrolled, shall order the name of such person stricken from the enrollment book, except as hereinafter provided. If at such hearing the person against whom the proceeding is instituted shall produce evidence that the custodian of primary records has incorrectly copied into the enrollment book the data contained in the declaration of such person, and that if correctly copied such person would be entitled to be enrolled in such election district, such order instead of requiring his name to be stricken from the enrollment book, shall require the correction of the enrollment book in accordance with such evidence. In either case the order shall require the custodian of primary records to-strike such name from the enrollment book, or to otherwise correct such enrollment book in accordance with such order. Upon the correction of such enrollment book in accordance with such order, the custodian of primary records shall certify such correction to the chairman of the general committee of each party to whom a duplicate set of enrollment books has been delivered in pursuance of subdivision seven of this section."

This was a remedy provided to purge the roll.

Under the provisions of said act, the applicant herein submitted his verified application setting forth that he was a citizen of the United States, of full age, a resident in the First assembly district in the city of New York, and that he was a duly qualified elector and an enrolled Republican in said election district; that the name of James

102 N.Y.S.—54

O'Brien appeared on the enrollment book of the Sixteenth election district of the First assembly district as one of the electors enrolled with the Republican party of the district and is there entitled to vote at the next general election, and "on information and belief the said elector is not qualified or entitled to vote in said election district at the next primary election, the election for which said enrollment was made, for the following reasons; to wit: Said elector is enrolled upon the said enrollment book as residing at No. 9 Mulberry street in said election district, and said elector has removed from and no longer resides at said address nor in said election district in which he enrolled as aforesaid." This application was accompanied by the affidavit of one Capone, who deposed:

"I reside at No. 9 Mulberry street in the borough of Manhattan, city of New York. The above-named elector, James O'Brien, has removed from No. 9 Mulberry street, and does not now reside there, nor in said election district. His present address is unknown."

Upon such papers, the court at Special Term issued an order to show cause addressed to the board of elections, as custodian of primary records, and James O'Brien, why an order should not be made, directing the said custodian to strike the name of said O'Brien from the enrollment book. This order, together with the affidavits and proposed final order, were served on James O'Brien, by inclosing a true copy thereof in a postpaid envelope addressed to him at his address appearing upon said enrollment book in the manner provided by the said law, and also upon the board of elections. Upon the return day, the said O'Brien did not appear. The board of elections appeared by the corporation counsel, and opposed the application. The learned court at Special Term denied the application, and the applicant appeals. The board of elections, represented by the corporation counsel alone, appears as respondent in this court.

The functions of that board are purely ministerial in the premises. It was claimed in the court below, and is urged here, that the papers upon which the application was asked failed to provide that "sufficient evidence" required by the law to authorize the striking of the name from the roll. In other words, that a positive affidavit by a person residing in the same house given as the address of the person proceeded against, that "the above named elector, James O'Brien, has removed from No. 9 Mulberry street, and does not now reside there, nor in said election district," is destroyed by the further phrase, "His present address is unknown," and that the tender regard of the court for the rights of the voter will not permit it to order his name striken from the primary roll made up eleven months before, notwithstanding a resident of the same house swears that he no longer resides there, and has moved from the election district; although said voter puts in no appearance, although the papers in a secure and postpaid envelope sent to the address given elicited no response, because the affiant states what is presumed to be the truth, as he swears to it, that he does not know what his present address is.

It seems to me that any such rule destroys the law. The very purpose of the act is to meet the exigencies of the crowded and migratory

population of the city of New York. It is to reach people who have the apparent right to vote, and who have moved since they enrolled, and who have gone no one knows where. It seems to me that enough was submitted to make out a prima facie case, and that where no one appears to complain of a proposed or accomplished invasion of his rights of primary franchise the court ought not, upon the opposition of a mere ministerial body, indulge in such an over-refined analysis of the papers as in effect to judicially repeal a proper law passed by the Legislature to meet and remedy a known evil.

This court, in the Matter of Morgan, 114 App. Div. 45, 99 N. Y. Supp. 775, upheld chapter 675, p. 1714, of the Laws of 1905, which provided for the striking of an elector's name from the registration list for a general election upon the affidavit by the state superintendent of elections, or any of his deputies, when duly directed, that he had interrogated an inmate, house dweller, keeper, caretaker, owner, proprietor, or landlord thereof, as to said elector's residence therein, and that the said affiant was informed by one or more of said persons (naming them), that they were acquainted with and knew the persons residing therein, and that the elector did not reside therein, and that the elector did not reside in said premises 30 days before election, and making said affidavit presumptive evidence upon which an order could be made striking the name from the list. In that case, an affidavit upon information of an inmate, etc., was held to be sufficient to authorize an order to deprive the registered elector of his right to vote at a general election. In this case we have the positive affidavit of an inmate of the house that the enrolled elector has moved and does not reside in the election district. In my opinion, that is enough, considering the conditions that exist, the history of the primary election law, and the evils aimed at, to warrant the court, in the absence of any countervailing suggestion, of the right of the person proceeded against to remain on the roll, to remove him from it. Although the election has long since passed, we have treated this case as other election cases have been treated—as a matter of such general interest and importance that it ought to be passed upon.

For the foregoing reasons, the order appealed from should be reversed, and the application granted.

INGRAHAM, J., concurs.