COMMISSIONER OF WELFARE OF THE CITY OF NEW YORK, on Complaint of THERESA WALITS, Appellant, *v.* JOHN RICHTER, Respondent.

MEMORANDUM BY THE COURT. The order appealed from should be affirmed, without costs. We construe the provisions of subdivision 2 of section 69 of the New York City Criminal Courts Act that support may be ordered after the child reaches the age of sixteen years "for good cause shown" to require the showing of some unusual or exceptional circumstance. We view the continuance of a high school education as an ordinary circumstance and not within the statutory provision. We pass upon no other question.

BERGAN, J. (dissenting). The mother of a sixteen-year-old boy in his second high school year has applied to the Court of Special Sessions for extension of an order of filiation made in 1938 to provide for continued support of the

child by his father beyond the age of sixteen. The statute, New York City Criminal Courts Act (§ 69, subd. 2) applicable within the city of New York, but not elsewhere in the State, provides that support "shall be ordered" until the child reaches the age of sixteen years, and it "may be ordered" up to the age of twenty-one years or longer "for good cause shown" and "in the discretion of the court".

The Court of Special Sessions denied the application; and since the validity of the statute authorizing in New York City an order for support beyond the age of sixteen years is challenged by the father on the ground that it is an unreasonable classification and hence unconstitutional, that question is first examined.

Where, in the judgment of the Legislature, the special needs of one area of the State require the imposition of special duties or obligations on persons who live in those areas, the power to impose those obligations in limited areas to be affected, is beyond all question. These differences of public regulation imposed in some parts of the State but not in others have taken very many forms; some have been differences in criminal statutes; some have related to judicial procedure; some have turned on differing civil obligations in one form or another.

The fundamental rule governing such a geographic regulatory differential has nowhere been better stated than by O'BRIEN, J., in 1905, in a case dealing with the validity of an especially onerous statute affecting employment agencies in cities of the first class, but not elsewhere. (*People ex rel. Armstrong* v. *Warden*, 183 N. Y. 223.) Equality within the contemplation of the Fourteenth Amendment, he noted, " does not necessarily include a territorial equality" (p. 226). A law which, "though limited in the sphere of its operations, affects alike all persons similarly situated within such sphere, is valid".

It was this general view which had some nine years earlier (1896) led to the decision holding valid a statute prohibiting a person from engaging in or working at the barbering trade on Sunday, except in the city of New York or the city of Saratoga Springs, where a barber might work on Sunday until 1:00 P.M. (*People* v. *Havnor*, 149 N. Y. 195). VANN, J., noted that the statute "treats all barbers alike within the same localities" (p. 205).

The rule application has authorized a statutory presumption to be attached in New York City but not elsewhere to an affidavit by the Superintendent of Elections that on inquiry at the residence given by a registered voter it was stated he was not known to reside there (*Matter of Morgan* [*In re Rolle*], 114 App. Div. 45). It has authorized a provision of law allowing incarceration for a misdemeanor in New York or Buffalo for a period of up to three years where elsewhere in the State for the same offense it could be one year and a fine (*People ex rel. Kipnis* v. *McCann*, 199 App. Div. 30); and a similar provision in relation to disorderly conduct, although no jury trial was allowed before a New York Magistrate (*People ex rel. St. Clair* v. *Davis*, 143 App. Div. 579).

It is true that in a narrow area dealing with the effect of testimony of witnesses, geographic distinctions have been regarded as unreasonable; and, indeed, it might be difficult to maintain that the testimony of a man in one part of the State should be treated differently from his testimony in another part of the State. Thus in *Commissioner of Public Welfare* (*Krushel*) v. *Ladutko* (256 App. Div. 775) a statutory provision allowing both a husband and wife to testify to nonaccess in New York City, although the common-law

prohibition upon such testimony applied elsewhere, was held invalid; and in *Commissioner of Public Welfare (Martinez)* v. *Torres* (263 App. Div. 19) a similar provision excluding proof of access by others than the putative father unless corroborated was held invalid.

But these decisions affecting the testimony of witnesses can have no weight against the right of the Legislature to enlarge the obligation resulting from an order of filiation upon a natural father to support a child by a higher or lower financial standard for a longer or shorter period of time in one community than in another, because that power is well-founded in legal principle and the court must recognize the general competence of the Legislature to act in that field.

The number of filiation cases in New York as compared with the number elsewhere; the special requirements of urban living and of urban secondary education; the opportunities and limitations in one section of the State or another of a child's efforts at self-support, all fall within the range of a proper legislative power to provide adequately for the differences it sees and recognizes.

This legislative effort to deal with conditions which may differ from community to community may be seen, for example, in the power of the Children's Court to provide for legitimate children outside the city of New York during "the minority of such person" (Children's Court Act, § 30-a, subd. 4); and in the city of New York in the case of a legitimate child until he is seventeen years old or in exceptional circumstances after that age (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 4); or in the Uniform Support of Dependents Law as amended by chapter 721 of the Laws of 1954, in the case of a child born out of wedlock until he is seventeen years of age; or over that age, under certain circumstances. (§ 2, subd. c.)

There should be no difficulty in holding here that the Legislature had power to authorize the Special Sessions to order the father to support the child beyond the age of sixteen under New York City Criminal Courts Act (§ 69, subd. 2). It can scarcely be maintained that a child born out of wedlock is usually to be found less in need of support than a child of a marriage.

But, it is argued, there has been no "good cause shown", in the language of the statute, to require the father to continue to support the child. The child, however, at the time of the hearing (July 21, 1954) was sixteen years old and was attending the Cardinal Hayes High School in his second term. He had a good scholastic record.

His mother was earning $25 a week employed as a part-time domestic house-worker. She has no assets or property. She lives in a heatless apartment, paying $25 a month rental. From these meagre resources she pays $10 monthly tuition and $5 a week for school expenses. She is unable to work full time because of a back injury.

The father is a bartender employed at $85 a week by a restaurant partnership in which his wife is one-half owner. The partnership has a $9,000 equity in the restaurant. In any reasonable view of the needs of the child and the ability of the father to meet those needs, a case of "good cause" for continuance of support is firmly established.

We have gotten far beyond the point where we treat as a luxury the continuance of a high school education by a child motivated to go on with it. It is said that the year involved [1954] has now long passed and that what we do presently can be of no help to mother or child; but we review this case from

the situation of the Special Sessions Judge as it came before him for decision; and it would be unfortunate, indeed, if affirmance on the ground we could do no good by reversal were to become a precedent which the Special Sessions would feel a need to follow in similar situations.

The order should be reversed and the direction for support of the child continued while conditions remain substantially unchanged during the course of his high school education.

Peck, P. J., Breitel, Bastow and Cox, JJ., concur in decision; Bergan, J., dissents and votes to reverse and grant the application for extension of order of filiation in opinion.

Order affirmed, without costs.