## PEOPLE v. ELLENBOGEN.

(Supreme Court, Appellate Division, First Department. June 20, 1906.)

1. CRIMINAL LAW—EVIDENCE—AUTHORITY OF OFFICER—MAKING FALSE STATEMENT UNDER OATH.

On a prosecution for taking a false oath before a deputy state superintendent of elections (Laws 1905, p. 1849, c. 689, § 7), proof was made that the original designation by the superintendent of the person who took the oath as a deputy authorized so to do had been lost, and could not be found by the person administering the oath. *Held*, that a letterpress copy was properly admitted to prove the authority of such officer.

[Ed. Note.—For cases in point, see vol. 14, Cent Dig. Criminal Law, §§ 887–889.]

2. PERJURY—FALSE STATEMENT UNDER OATH—AUTHORITY OF OFFICER—EVIDENCE.

In a prosecution for taking a false oath before a deputy state superintendent of elections (Laws 1905, p. 1849, c. 689, § 7), proof of the appointment by the acting superintendent of the deputy before whom the oath was taken, and that such officer was administering oaths as a deputy, is sufficient to cast the burden on defendant of showing that no oath of office had been taken by the superintendent or deputy.

99 N.Y.S.—57

**3. SAME—MATERIALITY OF STATEMENT.**

In a proceeding before a deputy state superintendent of elections to determine the validity of the registration of electors, the false statement as to the residence of such electors is a material false statement as to a pertinent matter, falling within Laws 1905, p. 1849, c. 689, § 7, making it a felony to take a false oath before such officer.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perjury, §§ 38–49.]

**4. CRIMINAL LAW—EVIDENCE—WHO ARE ACCOMPLICES.**

In a proceeding under Laws 1905, p. 1849, c. 689, § 7, making it a felony to take a false oath before a deputy state superintendent of elections, certain electors swore that they did not reside where defendant testified they resided before the deputy, and where they were falsely registered. *Held*, that they were not accomplices as to defendant, so as to need corroboration.

**5. SAME—GOOD CHARACTER—WEIGHT AND EFFECT.**

While defendant is entitled to the benefit of proof of previous good character, yet in determining what weight should be given to it the jury may take into consideration defendant's testimony, and the impression which he created in giving it.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 846.]

**6. ELECTIONS—RESIDENCE OF ELECTORS—SUFFICIENCY IN GENERAL.**

The right to register and vote is dependent on an actual, and not an imaginary, residence. and is not a matter of choice.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Elections, §§ 67–70.]

**7. PERJURY—INSTRUCTIONS—GOOD FAITH OF DEFENDANT.**

In a prosecution for swearing falsely to a deputy state superintendent of elections as to the residence of an elector (Laws 1905, p. 1849, c. 689, § 7, defendant cannot complain of an instruction that the real residence of the electors was immaterial if defendant believed their residence to be as he stated on his oath.

Appeal from Trial Term, New York County.

Samuel Ellenbogen was convicted of making a false statement before a deputy state superintendent of elections. From the judgment of conviction, and an order denying a motion for a new trial, he appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and CLARKE, JJ.

George M. Curtis, for appellant.
Julius M. Mayer, Atty. Gen., for the People.

McLAUGHLIN, J. On the 10th day of October, 1905, Barnett Mendelsohn and his son, Jacob, appeared before the inspectors of election sitting as a registration board for the Eighteenth election district of the Second assembly district of the county of New York, and registered for the purpose of voting at the next ensuing general election, as residing with one Block on the first floor of No. 55 Mott street, which was within such election district. On the 28th of October following, the state superintendent of elections for the Metropolitan election district, through his deputies, had under investigation the correctness of this registration, and whether or not the Mendelsohns actually resided at that place, and were entitled to vote therefrom. In the course of such investigation the Mendelsohns had been summoned to the office of the superintendent or his deputy, and they arrived shortly

before 8 o'clock of the evening of that day, and there remained until half past 10. Block had also been summoned, and shortly thereafter his wife was subpœnaed, and she arrived at the office either with the defendant or a little while before he did. Mrs. Block was asked certain questions touching the residence of the Mendelsohns, and was about to be further interrogated on that subject when the defendant interposed in her behalf, and suggested that she be permitted to go home to her children, because he knew all about the Mendelsohns, and was willing to make a statement under oath that they lived at No. 55 Mott street. One Emil Fuchs, a deputy superintendent of elections, had the investigation in charge, and he thereupon permitted Mrs. Block to go, and placed the defendant under oath, and questioned him with regard to the residence and qualifications of the two Mendelsohns to vote. The defendant's statements were reduced to writing, and thereafter subscribed and sworn to by him before Fuchs as such deputy. In this statement he stated that he knew both the Mendelsohns; that they resided at No. 55 Mott street, and had so resided for more than three months immediately prior thereto; that he knew they were at that time at that place because he had left them there about 30 minutes previous; the elder Mendelsohn being asleep. It was about 10:30 p. m. when this statement was signed and sworn to, and the two Mendelsohns were then, and for more than two and a half hours immediately prior thereto had been confined in the office of the superintendent—a room adjoining that in which the statement was made. The defendant was immediately placed under arrest, and subsequently indicted. The indictment contained two counts—the first charging him with the crime of feloniously making a false statement under oath before a deputy state superintendent of elections for the Metropolitan election district (section 7, c. 689, p. 1849, Laws 1905), and the second for the crime of perjury (section 96, Pen. Code). At the trial the people were required to elect upon which count of the indictment they would go to the jury, and they thereupon selected the first. The jury rendered a verdict of guilty, and from the judgment of conviction entered thereon, and an order denying a motion for a new trial, the defendant appeals.

He urges, among other grounds, why the conviction and order should be reversed: (1) The unconstitutionality of the law creating the office of state superintendent of elections for the Metropolitan district (Laws 1898, p. 1612, c. 676, as amended by chapter 689, p. 1846, Laws 1905), especially with respect to the power of the superintendent or his deputies to administer oaths; (2) that no proof was offered at the trial that Fuchs was ever appointed a deputy state superintendent of elections with power to administer oaths; and (3) that no proof was offered that Fuchs or the superintendent himself ever qualified by taking their respective oaths of office.

Since the argument of this appeal, this court has decided that the law creating the office of state superintendent of elections for the Metropolitan election district is constitutional, and a valid, exercise of legislative power. Matter of Morgan (Sup.) 99 N. Y. Supp. 783. Hence it is unnecessary to further discuss this question. The enforcement of it by the superintendent or his deputies does not involve the exercise of

judicial power. People ex rel. Bender v. Milliken, 185 N. Y. 35, 77 N. E. 872.

The defendant proved by the cross-examination of Fuchs that he had been a deputy state superintendent of elections for seven years. The Metropolitan election district law, as amended by section 7, c. 689, p. 1849, of the Laws of 1905, provides that:

"The superintendent, his chief deputy, and not more than ten deputies duly designated by the superintendent for that purpose under his hand and seal of office are hereby authorized and empowered to administer oaths and affirmations in the usual appropriate forms to any person in any matter or proceeding authorized as aforesaid and in all matters pertaining or relating to the elective franchise, and to take and administer oaths and affirmations in the usual and appropriate forms in taking any affidavit or deposition which may be necessary or required by law or by any order, rule or regulation of the superintendent for or in connection with the official purposes, affairs, powers, duties or proceedings of said superintendent or deputies or any official purpose lawfully authorized by said superintendent."

The original designation by the superintendent of Fuchs as one of the deputies authorized and empowered to administer oaths was lost, and a letterpress copy was introduced in evidence by the people. The loss of the original and the inability of Fuchs to find it was sufficiently proved to entitle the copy to be read in evidence, and no error was committed by the court in so holding.

Nor do I think it was incumbent upon the people to prove that the state superintendent and Fuchs had taken and filed their respective oaths of office. Proof, however, was given to the effect that Morgan was acting as state superintendent, and also that Fuchs was acting as a deputy, and administering oaths in connection with his duties as such. Hence, both were at least officers de facto. In People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451, the court held that a challenged voter swearing falsely before a de facto board of inspectors was liable to the same punishment as if the oath had been administered by inspectors de jure. The same rule was, in effect, reiterated in Lambert v. People, 76 N. Y. 220, 32 Am. Rep. 293, in People v. Hopson, 1 Denio, 574, and in Schiff v. Leipziger Bank, 65 App. Div. 33, 72 N. Y. Supp. 513. In State v. Hascall, 6 N. H. 352, the court held that it was sufficient prima facie, on an indictment for perjury, to show that the person by whom the oath was administered was an acting magistrate, and that the evidence of the individual himself was admissible for that purpose. In Morrell v. People, 32 Ill. 499, it was held that proof that the person before whom the oath was taken habitually acted in the capacity of a particular officer was only prima facie evidence of the fact, but, until rebutted by competent proof, it was sufficient, without proving the appointment or commission. In Keator v. People, 32 Mich. 484, it was held that evidence that the oath was administered in open court by one who was acting as deputy clerk was sufficient proof of his official character, and in a collateral proceeding it was enough that he was shown to be an officer de facto.

The most liberal view that could be taken under the rule laid down in the cases cited would be to hold that it was for the defendant to prove, if he could, that Fuchs had not been legally appointed, or had not

qualified so that he could administer an oath. Having received his appointment from the acting superintendent, this prima facie authorized him to administer the oath. The defendant, however, did not offer any affirmative proof to the effect that no oath of office had in fact been taken either by the superintendent himself or by Fuchs, and he cannot now be heard to say that the deputy had no power to administer the oath to him, or that the superintendent had no power to appoint Fuchs. Fuchs was engaged in determining whether or not the Mendelsohns were entitled to vote from the place and in the district in which they had registered. That was a pertinent inquiry, and one which he was authorized to make under the provisions of the Metropolitan election district law. The statements made by the defendant in his affidavit were material because they related positively to a fact concerning which the inquiry was made. This law provides:

"Any person who shall make any false statement under oath before the state superintendent, his deputy or other deputy authorized to take oaths as herein provided, is guilty of a felony."

There was ample evidence to justify the conclusion of the jury that the Mendelsohns did not live at 55 Mott street, and that the defendant knew they did not, and willfully made a false affidavit in that respect.

The two Mendelsohns and a daughter of the family swore they had lived at another place and in another election district for more than two years past.

It is also urged that the Mendelsohns were accomplices, and therefore their testimony should have been corroborated. They were guilty of the crime of false registration, and, had the defendant been indicted for aiding them in the commission of that crime, there might be some force in the suggestion, but they were in no sense accomplices with the defendant in making the false statement. But, even if the defendant's contention in this respect were true, there was sufficient corroboration of their testimony that they did not live at the place from which they registered, and that the defendant made the false affidavit.

The defendant proved his previous good character, and requested the court to charge that good character created a doubt of defendant's guilt. The court charged that it might create a doubt, and the defendant was entitled to the benefit of it, but added, in determining how good the character was, and how much weight should be given to it, the jury might take into consideration the defendant's testimony in his own behalf, and the impression which he created while testifying. To this modification the defendant excepted. It was proper and incumbent upon the jury to weigh the defendant's testimony, and they had a right in doing so to take into consideration his appearance upon the witness stand. It is true, in a sense, that good character is an issue in a criminal trial, but it is equally true that it is for the jury to say what effect shall be given to such character in determining the guilt or innocence of the accused.

The court properly refused to charge that the Mendelsohns' residence, for the purpose of registration and voting, was one of choice, and that upon the evidence they had a right to register from the place they did. Their right to register and vote depended upon an actual, and not an im-

aginary residence.   The court did charge, however, that it was immaterial where the Mendelsohns really lived, if the defendant did in fact believe when he made the statement that they lived at No. 55 Mott street. This instruction was certainly as favorable to the defendant as he could claim.

After a careful consideration of the record, I am of the opinion the defendant had a fair trial, that the evidence sustains the verdict of the jury, and that no errors were committed which call for a reversal of the judgment.

The judgment and order appealed from, therefore, should be affirmed.   All concur.