Ernest F. Dunham, Appellant, *v.* Albert Ottinger, Individually and as Attorney-General of the State of New York, Respondent.

Constitutional law — Attorney-General — stockbrokers — fraud — provision of General Business Law for examination by Attorney-General as to fraudulent practices in respect to stocks and other securities and commodities valid — duty of Attorney-General under statute executive, not judicial — no unreasonable search and seizure — " due process " clauses of Federal and State Constitutions not applicable — grant by State of immunity from criminal prosecution in its own courts sufficient to satisfy constitutional requirement that no person shall be compelled in any criminal case to be a witness against himself.

1. Article 23-A of the General Business Law (Cons. Laws, ch. 20), entitled " Fraudulent Practices in Respect to Stocks, Bonds, Other Securities and Commodities," providing that the Attorney-General, when it shall appear to him that such fraudulent practices have been or are about to be employed, may make investigation and require the

person or partnership so charged to file a statement in writing under oath and attend and be examined and produce books or papers for examination (§ 352), and if satisfied that fraud has been or is about to be employed may bring an action to restrain the continuance thereof or the engaging therein (§ 353) and in addition institute criminal proceedings for any violation of the laws of the State applicable thereto, is constitutional and valid and the complaint in an action by a stock-broker engaged in selling various kinds of negotiable securities, to restrain the Attorney-General from examining him and his books under a subpoena and order issued pursuant to the statute, is properly dismissed.

2. An objection that the statute confers upon the Attorney-General judicial powers in violation of the constitutional provisions which confer such powers solely upon the courts, cannot be sustained. The Attorney-General decides nothing in a judicial way. He passes upon no question of civil violation or of criminal guilt. The ultimate and only end to which he can proceed is by action or criminal prosecution to submit to the courts the question whether a person has been guilty of such unlawful practices that he should be enjoined from farther pursuing them or should be subjected to a criminal prosecution. Everything which he does leading up to this point is the performance of an executive or administrative power and whatever judicial decision follows is made by the courts. It is the performance of administrative duties by an executive official and in no sense the decision of justiciable questions exclusively delegated to the jurisdiction of judicial tribunals.

3. Nor can it be successfully argued that the provisions of the statute authorize unreasonable search and seizure. The examinations authorized are to enable the Attorney-General to determine whether a situation exists which calls upon him for action under the other provisions of the statute and it is to be assumed that he will proceed in good faith and with knowledge of and regard for the principles which govern the relevancy of evidence. Whether a person has refused to appear or answer without " reasonable cause " is a question which, if presented, will in the end be subject to the adjudication of the courts.

4. Before the " due process " clauses of the Federal and State Constitutions can be successfully appealed to it must appear that some substantial right of the person invoking them is about to be violated by an exercise of governmental powers which run counter to the spirit of our institutions and processes as they have been established by custom and settled maxims of law and it is impossible to find any basis for the claim that this statute proposes such a violation. (*Matter of Davies,* 168 N. Y. 89; *Ward Baking Co.* v. *Western Union*

*Tel. Co.*, 205 App. Div. 723; *People ex rel. Ferguson* v. *Reardon,* 197 N. Y. 236, distinguished.)

5. A contention that the statute is invalid because it authorizes the Attorney-General to compel a person to give incriminating evidence that might be used against him in a criminal proceeding instituted by the Federal government cannot be sustained. All that the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does, it has satisfied the requirements of the Constitution.

*Dunham* v. *Ottinger,* 127 Misc. Rep. 683, affirmed.

(Argued October 4, 1926; decided November 16, 1926.)

APPEAL from a judgment of the Supreme Court, entered August 6, 1926, upon a dismissal of the complaint herein by the court at Special Term to which had been submitted, upon an agreed statement of facts, the question of the validity of article 23-A of the General Business Law under the State and Federal Constitutions.

*Joseph W. Spencer* for appellant. The attempt to give the Attorney-General power to issue subpœnas requiring attendance and examination before him violates the provisions of article VI of the State Constitution relating to courts. (*Matter of Davies,* 168 N. Y. 89; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; *Matter of Hertle,* 120 App. Div. 717; *Kilbourn* v. *Thompson,* 103 U. S. 168; *Matter of Attorney-General,* 21 Misc. Rep. 101; *Ward Baking Co.* v. *Western Union Tel. Co.,* 205 App. Div. 723; *Matter of Union Bank,* 147 App. Div. 593; *People ex rel. Ferguson* v. *Reardon,* 197 N. Y. 236; *Matter of Hirschfield* v. *Cook,* 227 N. Y. 298.) The proposed examination is a deprivation of liberty without due process of law within the meaning of section 5 of article I of the State Constitution and the Fourteenth Amendment of the Federal Constitution. (*Matter of Davies,* 168 N. Y. 89; *Matter of Both,* 200 App. Div. 423.) The demand that books and papers be produced for examination violates the provisions of section 8 of the Civil Rights Law relating to search and seizure. (*People* v. *Glennon,* 37 Misc. Rep. 1; *Boyd* v.

*U. S.*, 116 U. S. 616; *Matter of Foster*, 139 App. Div. 766.) The statute does not give immunity. (*People ex rel. Ferguson* v. *Reardon*, 197 N. Y. 236; *People ex rel. Morse* v. *Nussbaum*, 55 App. Div. 245; *Jack* v. *Kansas*, 199 U. S. 372.) The proceeding is a criminal proceeding and the plaintiff retains all the rights of a defendant in a criminal case. (*City of Rochester* v. *Gutberlett*, 211 N. Y. 309.) To require the attendance of the plaintiff pursuant to the subpœna would compel him to be a witness against himself in a criminal case contrary to the provisions of section 6 of article I of the State Constitution. (*People* v. *Ferola*, 215 N. Y. 285; *People* v. *Molineux*, 168 N. Y. 264; *People* v. *Mondon*, 103 N. Y. 211; *Yamato Trading Co.* v. *Brown*, 27 Hun, 248.) To require the plaintiff to produce his books pursuant to the subpœna would compel him to be a witness against himself in a criminal case contrary to the provisions of section 6 of article I of the State Constitution. (*Matter of Foster*, 139 App. Div. 769; *Riddle* v. *Blackburn*, 125 App. Div. 893; *Matter of Phillips*, 143 App. Div. 522.) The Martin Law is not a license law and denies the equal protection of laws. (*Buffalo Fertilizer Co.* v. *Town of Cheektowaga*, 61 Misc. Rep. 404.)

*Louis Marshall* and *James Marshall*, *amici curiœ.* Section 352 of the General Business Law, pursuant to which the subpœna was issued requiring the plaintiff to appear before the Attorney-General, is violative of section 6, article I, and article VI of the Constitution of the State of New York and of section 1 of the Fourteenth Amendment to the Constitution of the United States, and, in so far as it authorized such subpœna, it is unconstitutional and void. (*Matter of Davies*, 168 N. Y. 89; *Matter of Attorney-General*, 32 Misc. Rep. 1; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Counselman* v. *Hitchcock*, 142 U. S. 547; *People* v. *O'Brien*, 111 N. Y. 61; *Ward Baking Co.* v. *Western Union Tel. Co.*, 205

App. Div. 727; *Matter of Union Bank, No. 2,* 147 App.
Div. 593; 204 N. Y. 313; *Matter of Both,* 200 App. Div.
423; *People ex rel. Travis* v. *Knott,* 204 App. Div. 379;
*Boyd* v. *United States,* 116 U. S. 616; *People ex rel. Living-
ston* v. *Wyatt,* 186 N. Y. 383; *Watkins' Case,* 120 Mass. 118.)

*Albert Ottinger, Attorney-General* ( *Keyes Winter, Amos
Moscrip, George A. Lewis* and *Borden Mills* of counsel),
for respondent. The power to issue subpœna, examine
witnesses under oath, and require the production of books,
is a power that since 1790 has been frequently delegated
by the Legislature of this State to administrative or
executive officers and this subpœna power is thoroughly
imbedded in our practice and its constitutionality has
been invariably upheld, to the extent that the power is
essential to the performance of the official's 'duty.
(*Matter of McAdam,* 54 Hun, 637; *Matter of Hirschfield*
v. *Hanley,* 228 N. Y. 346; *Matter of Hirshfield* |v. *Cook,*
227 N. Y. 297; *Matter of Hertle,* 120 App. Div. 717;
*Matter of Fenton,* 58 Misc. Rep. 303; *People ex rel. Bender*
v. *Milliken,* 110 App. Div. 579; 185 N. Y. 35; *Matter of
McAneny,* 215 App. Div. 797; *People* v. *Ellenbogen,* 114
App. Div. 182; 186 N. Y. 603.) No unlawful search
and seizure is authorized by the statute or proposed by
the Attorney-General. The Attorney-General's sub-
pœna and order commanding the attendance and examina-
tion of the appellant with regard to his practices in the
sale of securities does not constitute a criminal charge
against the appellant which he is forced to answer and be
examined about. (*Matter of Fenton,* 58 Misc. Rep. 303;
*People* v. *Strollo,* 191 N. Y. 42.) Section 359₀ of the
Martin Act, entitled "Immunity," affords the appellant
full protection against any prosecution on account of any
testimony given by him that might tend to incriminate him
within the meaning of article I, section 6, of the Constitu-
tion of the State of New York. (*People ex rel. Lewisohn* v.
*General Sessions,* 96 App. Div. 201; 179 N. Y. 594; *People*

v. *Rosenheimer,* 209 N. Y. 115; *People* v. *Cahill,* 193 N. Y. 232.) Articles 5 and 14 of the amendments to the Federal Constitution are not applicable to actions and proceedings in State courts involving violations of State laws but regulate only actions and proceedings under the Federal Constitution and Federal statutes. The Constitution of the State of New York does not extend its protection against prosecution to the appellant in the Federal court or in the courts of other States. (*Ensign* v. *Pennsylvania,* 227 U. S. 592; *Baron* v. *Baltimore,* 7 Pet. 243; *Spies* v. *Illinois,* 123 U. S. 131; *Brown* v. *New Jersey,* 175 U. S. 172; *Barrington* v. *Missouri,* 205 U. S. 483; *Twinning* v. *New Jersey,* 211 U. S. 78; *Hale* v. *Henkle,* 201 U. S. 43; *Brown* v. *Walker,* 161 U. S. 591; *Jack* v. *Kansas,* 199 U. S. 33.)

HISCOCK, Ch. J. The plaintiff, who is a stockbroker engaged in selling various kinds of negotiable securities, has brought this action to restrain the defendant, as Attorney-General of the State, from examining him and his books under a subpœna and order which had been issued under the provisions of article 23-A of the General Business Law (Cons. Laws, chap. 20), sometimes known as the Martin Law and popularly described as the "Blue Sky Law." The demand for this relief is based on the theory that the statute is unconstitutional and void and this question of its validity is the one which is presented to us upon this appeal, rendering it necessary to summarize as briefly as possible the provisions which are material to the inquiry. For the purpose of presenting what seems a somewhat more logical view of the purposes of the statute, I shall summarize various provisions in a somewhat different order than they are found in the statute.

The statute is entitled "Fraudulent Practices in Respect to Stocks, Bonds, Other Securities, and Commodities." By section 353 it is provided: "Whenever

the Attorney-General shall believe from evidence satisfactory to him that any person, partnership, * * * has engaged in, is engaged or is about to engage in any of the practices or transactions heretofore referred to as and declared to be fraudulent practices, he may bring an action in the name and on behalf of the People of the State of New York against such person, partnership * * * and any other person or persons heretofore concerned in or in any way participating in or about to participate in such fraudulent practices, to enjoin such person, partnership, * * * and such other person or persons from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof."

Section 352 defines the fraudulent practices referred to in the foregoing section as, amongst other things, " any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise," " fictitious or pretended purchases or sales of securities or commodities " and " any practice or transaction or course of business relating to the purchase or sale of securities or commodities which is fraudulent or in violation of law and which has operated or which would operate as a fraud upon the purchaser."

Then by section 352 it is provided that " Whenever it shall appear to the Attorney-General, either upon complaint or otherwise, that in the advertisement, purchase or sale within this State for future delivery of any commodity * * * or that in the issuance, sale, promotion negotiation, advertisement or distribution within this State, of any stocks, bonds, notes, evidences of interest or indebtedness or other securities, or negotiable documents of title * * * any person, partnership * * * shall have employed, or employs, or is about to employ " any of the fraudulent devices and practices above described or " he believes it to be in the public interest that an investigation be made, he may in his discretion " require such person or partnership to file

a statement in writing under oath " as to all the facts and circumstances concerning the subject matter which he believes it is to the public interest to investigate " and also by subpœna and order may compel and order such person to attend and be examined before him or a magistrate or court and also produce any books or papers for examination " which he deems relevant or material to the inquiry." If a person so subpœnaed or ordered refuses without "reasonable cause" to obey the command of the subpœna or to be sworn, examined and interrogated or to produce the book or paper required he is made guilty of a misdemeanor.

In addition to these civil proceedings provision is made for the institution by the Attorney-General of criminal proceedings for any " violation of the laws of this State, applicable to or in respect of the practices or transactions which in this article are referred to as fraudulent practices." (Section 358.)

The statute safeguards the proceeding of examination or production of books by providing that any officer who participates in it who shall disclose to any person other than the Attorney-General the name of any witness examined or any other information shall be guilty of a misdemeanor; also that if any person shall ask to be excused from testifying or producing a book or paper on the ground " that the testimony or evidence, documentary or otherwise required of him may tend to incriminate him or to convict him of a crime or to subject him to a penalty or forfeiture, and shall notwithstanding be directed by the court, referee, magistrate or officer conducting the inquiry to testify or to produce such book, paper or document, he must none the less comply with such direction but in such event he shall not thereafter be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, pursuant thereto and no

testimony so given or produced shall be received against him upon any criminal action, suit or proceeding, investigation, inquisition or inquiry." (Section 359.)

Many objections are urged to the validity of the law. But eliminating those which do not seem to require serious consideration there are left as the more important ones the claims that the statute

1. Confers upon the Attorney-General judicial powers and, therefore, is in violation of the provisions of our Constitution which confer such powers solely upon the courts.

2. Denies to a person subjected to subpœna or order the benefit of that due process of law which is conferred by the Federal and State Constitutions and subjects him to unreasonable and unlawful " search and seizure."

3. Compels a person to be a witness against himself for purposes of a criminal prosecution because he is not protected from the effects of the evidence which he may give by any proper provision for immunity.

I am not able to see that the statute when fairly interpreted furnishes a basis upon which may be successfully rested any of these contentions and some pertinent general considerations may properly be taken into account in passing upon them. It is a matter of general knowledge that dishonest members of the business of dealing in securities such as are described in the statute have been accustomed to pursue fraudulent practices whereby the rights of their customers were violated and on occasions the public widely victimized. Of course, it was not only the privilege but the duty of the Legislature if possible to prevent these fraudulent practices. This was not only a duty which it owed to the public but incidentally it was for the benefit of those honestly carrying on this business and who were more or less discredited by the evil practices of a comparatively small number that the latter should be punished and stopped. In the attempt to discharge this obligation the Legislature adopted various laws such as those making it a criminal offen o

for a broker to " bucket " a customer's orders or to unlawfully pledge or use his securities and now, in addition, has enacted the statute which is before us. Honest brokers. as well as intended victims are interested in its enforcement if constitutional and limited by an administration which is reasonable and fair.

Its general plan and scope seem to be perfectly plain. The Attorney-General as an executive official of the State is given the power by appropriate injunctive action to restrain any person who is engaged or who is about to engage in the business of selling the securities and commodities designated in the statute by means and aid of fraudulent methods and practices which likewise are therein defined. He is also given the power through appropriate procedure to institute criminal prosecutions against such a person. And while the language of the statute confers upon him a permissive privilege to do these things there is no doubt that it imposes upon him the mandatory duty to perform them and thus protect the public. But the attempt to discharge the duty in a given case without any adequate and accurate knowledge of the facts might result either in an ineffective and abortive attempt or in the unjust prosecution of persons' who were guilty of no offense or violation. Therefore, the Attorney-General as an administrative official charged with the duty of enforcing the statute is given the power to secure from a person whom he suspects of violation of the statute by means of questionnaire, oral examination and inspection of books, under conditions of absolute secrecy, the information which will enable him to determine whether the foundation does exist for further proceedings and which information, subject to the immunity hereinafter to be referred to, may be utilized in the prosecution authorized by the statute. And it is in the light of such features as these that we come to a consideration of the objections which have been mentioned.

I find no bestowal upon the Attorney-General of any

1926.]         Opinion, per Hiscock, Ch. J.        [243 N. Y. 423]

of those judicial powers which by our Constitution are lodged with the courts. He decides nothing in a judicial way. He passes upon no question of civil violation or of criminal guilt. The ultimate and only end to which he can proceed is by action or criminal prosecution to submit to the courts the question whether a person has been guilty of such unlawful practices that he should be enjoined from farther pursuing them or should be subjected to a criminal prosecution. Everything which he does leading up to this point is the performance of an executive or administrative power such as has long been recognized as perfectly appropriate and valid and whatever judicial decision follows is made by the courts. It is the performance of administrative duties by an executive official and in no sense the decision of justiciable questions exclusively delegated to the jurisdiction of judicial tribunals.

Neither can I find any viewpoint from which it can be successfully argued that the provisions of the statute authorize unreasonable search and seizure, deprive any one of due process of law or compel him to furnish incriminating evidence against himself for the purposes of a criminal prosecution.

The statute does not commission the Attorney-General to embark upon any roving course for the purpose of generally prying into the affairs of any person. Having authorized him to institute proceedings to prevent or punish violations of the statute it authorizes him to acquire information, make investigations and conduct examinations " as to all the facts and circumstances concerning the subject matter which he believes it is to the public interest to investigate." Or again, to examine witnesses under oath and require the production of any books or papers " which he deems relevant or material to the inquiry." This all to the end of enabling the Attorney-General to determine whether a situation exists which calls upon him for action under the other provisions of the statute and it is to be assumed that he will proceed in

28

good faith and with knowledge of and regard for the principles which govern the relevancy of evidence. If through ignorance or intention he transgresses these principles the victim of his illegitimate and oppressive attempt not only will be immune under the statute from punishment for refusing to submit to his unreasonable requests or questions but can always appeal to the courts for protection. (*Matter of Hirschfield* v. *Hanley*, 228 N. Y. 346.) The question whether a person has refused to appear or answer without " reasonable cause " is thus one which if presented will in the end be subject to the adjudication of the courts.

It would be tedious and is unnecessary to consider at length the meaning of the " due process " clauses of the Federal and State Constitutions as they are invoked against the statute. Certainly before they can be successfully appealed to it must appear that some substantial right of the person invoking them is about to be violated by an exercise of governmental powers which run counter to the spirit of our institutions and processes as they have been established by custom and settled maxims of law. It is impossible to find any basis for the claim that this statute proposes such a violation.

The power to investigate and examine witnesses to the end of a better discharge of their duties has been conferred upon administrative boards and officials without successful challenge by so many statutes that it is undesirable to refer to them all. Perhaps there may be properly selected as more or less analogous to the present one the statute conferring upon the Superintendent of Banks the power to investigate the affairs of banks to the end of a proper supervision of their affairs; upon the Commissioner of Agriculture the power to investigate and examine witnesses in order better to discharge the duties conferred upon him; upon the Commissioner of Accounts of the city of New York to subpœna and examine witnesses and require the production of material books

as he may deem for the best interests of the city. These and other similar statutes have been upheld as constitutional and valid. (*Matter of Hertle,* 120 App. Div. 717; affd., 190 N. Y. 531; *Matter of Hirshfield,* 227 N. Y. 297; *Matter of Hirschfield* v. *Hanley,* 228 N. Y. 346; *People ex rel. Bender* v. *Milliken,* 185 N. Y. 35; *People* v. *Ellenbogen,* 114 App. Div. 182; affd., 186 N. Y. 603; *Matter of Union Bank,* 204 N. Y. 313.)

The power here attacked is akin to that right of the Legislature to investigate and to subpœna and examine witnesses to the end of safeguarding public interests by appropriate legislation and which is so well established as to have passed beyond the realm of controversy. (*People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463.)

And finally the powers conferred upon the Attorney-General by this statute are not substantially different than and certainly are not in excess of the powers conferred by statutes of other States which have proceeded upon the theory that the business of dealing in and selling securities to the public is one of such public concern and subject to such widespread abuses that it is clearly subject to regulation by license and supervision. The constitutionality of such laws has been upheld not only by the highest courts of many States but also by the United States Supreme Court. Some of these decisions are: *Hall* v. *Geiger-Jones Co.* (242 U. S. 539); *Caldwell, Attorney-General,* v. *Sioux Falls, etc., Co.* (242 U. S. 559); *Merrick* v. *Halsey & Co.* (242 U. S. 568); *People* v. *Lee* (311 Ill. 552); *King* v. *Commonwealth* (246 S. W. Rep. 162); *Biddle* v. *Smith* (148 Tenn. 489); *Standard Home Co.* v. *Davis* (217 Fed. Rep. 904). We have no trouble in assenting to the proposition that a license may be required of those proposing to engage in this manner of business. There would seem to be even more chance for deception and fraud and, therefore, more ground for such a requirement in their cases than in the case of an ordinary real estate broker where we held that a license might be required. (*Roman* v. *Lobe,* 243 N. Y. 51.)

But our Legislature chose not to follow this course of licensing. In our opinion it went a shorter and perhaps a safer distance than the Legislatures of some other States by simply requiring the Attorney-General to be on the lookout for fraudulent practices and when he saw what seemed to him to be the appearance of such practices, whether existent or threatened, to investigate and if investigation confirmed appearances to take steps to halt the evil. Certainly no fundamental rights were impaired by an investigation and examination authorized in this course of supervision milder than is prevalent elsewhere within the principles of the authorities which have been cited. If our Legislature might have required licenses issued only upon full disclosure of details and revocable upon disclosure of prohibited acts disclosed by searching supervision, it must have the power to go only part of this way and authorize its Attorney-General to appeal to the courts to enjoin unlawful practices disclosed by an examination of those who either are or threaten to become the fraudulent actors. It seems quite impossible to hold that it might require a full disclosure of facts as a condition to a license, and may not authorize examination and investigation to determine whether a person is engaged in practices forbidden by the statute to the end that the courts may stop him in his prohibited course before he has victimized the public.

I do not find anything in the cases of *Matter of Davies* (168 N. Y. 89), of *Ward Baking Co.* v. *Western Union Tel. Co.* (205 App. Div. 723) or of *People ex rel. Ferguson* v. *Reardon* (197 N. Y. 236) which is opposed to these views. In the *Davies* case it is true that the court held that the powers conferred upon justices of the Supreme Court by the particular provisions under review to grant orders for the examination of witnesses involved the exercise of judicial powers and were not purely administrative. The accepted provisions of the Civil Practice Act providing for the granting of similar orders in actions is a

practical demonstration of that proposition. That, however, is by no means a legal negation of the other proposition that the Legislature may grant to an administrative official the mere power to investigate and examine for the purpose of enabling him to discharge the duties imposed upon him and the affirmation of which legislative power by binding authorities has already been discussed. In the *Ward* case in a very elaborate and carefully considered opinion by Mr. Justice KELLOGG, the court simply reached the conclusion that a fair interpretation of the Executive Law (Cons. Laws, chap. 18), which it was attempted to utilize for purposes of a widespread investigation to ascertain whether a crime had been committed, did not authorize such a proceeding. In the *Reardon* case where a statute was being considered which provided for a general examination and overhauling of all of a broker's books including those which contained the record of confidential transactions with customers, it was held that the statute gave no protection against the use in criminal proceedings against the broker of the information which was thus obtained and without considering any other ground it was decided that such a statute was in conflict with the provisions of the Constitution against self-incrimination.

In this discussion I have of course been considering the power of the Legislature to empower the Attorney-General to conduct compulsory investigations and examinations of witnesses to the end that he might be better able to protect the public by enjoining fraudulent practices through the process of civil proceedings authorized by the statute. What has been said would not be applicable if the statute attempted to authorize the Attorney-General to compel a person to give incriminating evidence which might be used against him in a criminal proceeding and so I am led to a brief consideration of the final contention of the relator that this statute does attempt to do this because it does not afford immunity to a witness against such use of the testimony which he may give.

While some insubstantial criticism is made of the manner in which a witness is compelled to claim immunity under the statute, the main claim is that the statute does not properly safeguard him by precluding the use of his testimony in criminal proceedings which might be instituted by the Federal government. This is true. The statute does not purport to give and could not give protection against such a prosecution. It does give ample protection against the use of such testimony in our own tribunals and it is perfectly well established that this is a sufficient immunity; that all that the State is required to or can do is to give immunity against its own processes and, if it has done that, as this statute does it, it has satisfied the requirements of the Constitution. (*Hale* v. *Henkel*, 201 U. S. 43; *Brown* v. *Walker*, 161 U. S. 591.)

In conclusion, it may be admitted as it already has been in substance that this statute confers upon the Attorney-General great and far-reaching powers which might be made a means of persecution and injury of perfectly honorable members of the business in question by an unwise or unscrupulous official. It is one of the privileges of the people in our form of government to be misled into electing such an one. But as we have often said the question of the extent of authority which shall be conferred by the Legislature, invested with power, is for it and not for the courts. We are not to assume that such an official as the Attorney-General of the State will be oblivious of his duties, and this statute is by no means lacking in substantial provisions by which to safeguard its execution. Any inquiry under it must be relevant to the purposes proposed by it; any person of whom examination is sought is immune from punishment for a refusal to answer unreasonable questions or to comply with unreasonable requests; he is protected, if he asks the privilege, from the use of any testimony which he may give in criminal proceedings; and lastly any official conducting an investigation or examination who gives publicity to the information which has been obtained is

himself guilty of a misdemeanor. Then, when we consider that in addition to these specific means of protection the courts will always be open for any appeal by one who is being persecuted, I think that it may be fairly expected that none of the dire predictions of the evils to flow from the statute will be realized and that, on the other hand, it may be a very substantial protection to the public from those widespread evils which have been perpetrated upon it through lack of adequate safeguards.

For these reasons I think that the judgment appealed from should be affirmed, with costs.

CARDOZO, POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment affirmed, etc.