In the Matter of the Application of THOMAS H. KENNEY and
   Another, Petitioners, to Vacate and Quash the Alleged Subpœnas
   Purporting to Have Been Issued by the Attorney-General of the
   State of New York, Respondent.

Supreme Court, New York County, June 8, 1927.

Corporations — fraudulent stock sales — application to vacate subpœnas
   issued pursuant to General Business Law, § 352, in action to investigate
   fraudulent practices with respect to issue and ·sale of securities —
   General Business Law, § 352, as amended by Laws of 1927, chap. 365,
   authorizes Attorney-General in such action to subpœna and summon
   persons other than parties after institution of suit.

Section 352 of the General Business Law, as amended by Laws of 1927, chapter
   365, which, after authorizing the Attorney-General in an investigation of
   fraudulent practices in the purchase or sale of securities, to subpœna witnesses,
   examine them under oath and require the production of books and papers
   material to the inquiry, provides that " such power of subpœna and examination
   shall not abate or terminate by reason of any action or proceeding brought by
   the attorney-general " under said statute, permits the Attorney-General, after
   the commencement of the action, to subpœna or examine persons, other than
   the parties named therein.

Accordingly, the petitioners, not made parties defendant in an action brought
   by the Attorney-General with respect to the issue and sale of certain securities,
   must submit to an examination by the Attorney-General, pursuant to subpœnas
   issued under section 352 of the General Business Law.

APPLICATION to vacate subpœnas issued under section 352 of
the General Business Law.

*Nash Rockwood* [*Louis Marshall, Nash Rockwood* and *James
Marshall* of counsel], for the petitioners, for the motion.

*Albert Ottinger, Attorney-General* [ *Keyes Winter, Assistant Attorney-
General,* of counsel], in opposition.

LEVY, J.    The petitioners have been subpœnaed by the Attorney-
General of the State to testify in regard to matters relating to the
practices of one George Graham Rice with respect to the issue,
negotiation and sale of certain securities within the State.    The
subpœnas have been issued apparently under the authority of
section 352 of the General Business Law (added by Laws of 1921,
chap. 649, as amd. by Laws of 1927, chap. 365), a part of what is
commonly known as the Martin Act.    That provision grants the
Attorney-General power to make an investigation of fraudulent
practices in the purchase or sale of securities, and he may further
" subpœna witnesses, compel their attendance, examine them under
oath before him or a magistrate, a court of record or a judge or
justice thereof and require the production of any books or papers

which he deems relevant or material to the inquiry." The peti-
tioners have moved to quash the subpoenas on the ground that the
Attorney-General under the circumstances has exceeded his authority
and on the further ground that his exercise of such authority is uncon-
stitutional. The second basis of attack can be dismissed briefly by
reference to the views of the court in *Dunham* v. *Ottinger* (243 N. Y.
423, 433), where in commenting upon the provisions of the Martin
Act in general and section 352 in particular, Chief Judge HISCOCK
said: " Neither can I find any viewpoint from which it can be suc-
cessfully argued that the provisions of the statute authorize unreason-
able search and seizure, deprive any one of due process of law or
compel him to furnish incriminating evidence against himself for
the purposes of a criminal prosecution."

But the objection which requires more serious consideration is
this, the proceedings against George Graham Rice are already
before the court in certain actions to enjoin him and his associates
against certain alleged fraudulent practices. It is, therefore, urged
that after the commencement of an action, the power of the
Attorney-General under section 352 of the General Business Law
has become exhausted, and his examination of witnesses is controlled
by the procedure set forth in the Civil Practice Act as in actions
generally. This view of the statute was upheld by Mr. Justice
STALEY at Special Term in New York county in *Matter of Reiss*
(129 Misc. 698), and the subpoena for the examination of the wit-
ness was there quashed. But by an amendment effective March
29, 1927, the following language was added to section 352: " Such
power of subpoena and examination shall not abate or terminate by
reason of any action or proceeding brought by the attorney-gen-
eral under this article."

The petitioners argue that the amendment merely permits that
official to proceed with his examination of persons subpoenaed
prior to the institution of the action and that its intent was not
to enlarge upon his right in that direction so as to enable him to
subpoena witnesses after the institution of suit. These subpoenas
were served subsequent to the commencement of the action, and
it is thus urged that they are of no effect. Whether this is so or
not must be gathered from a close examination of the purposes
of section 352. The responsibilities of the Attorney-General there-
under have been defined in the *Dunham* case (at p. 432), as charging
him " as an administrative official * * * with the duty of
enforcing the statute," with " power to secure from a person whom
he suspects of violation of the statute by means of questionnaire,
oral examination and inspection of books, under conditions of
absolute secrecy, the information which will enable him to determine

whether the foundation does exist for further proceedings and which information, subject to the immunity hereinafter to be referred to, may be utilized in the prosecution authorized by the statute." And again (at p. 433): "This all to the end of enabling the Attorney-General to determine whether a situation exists which calls upon him for action under the other provisions of the statute * * *."

These comments of the highest court are upon the statute as it existed prior to the amendment of March 29, 1927. In the light of these utterances, the opinion of Mr. Justice STALEY that the broad power of preliminary investigation under section 352 was exhausted with the institution of the action, was undoubtedly sound. When, however, the amendment was adopted, it was indeed intended to broaden this preliminary power. As regards the person proceeded against by action, the right of private examination of the Attorney-General undoubtedly lapsed, because the institution of the action evidently accomplished the purposes for which a secret examination of the defendant was provided — to determine whether action under the other provisions of the statute was necessary. But as regards third persons, the amendment confirmed the right of the Attorney-General in his power of investigation as an administrative official, to establish the breadth and scope of the judicial proceeding and perhaps to join other parties as defendants. It is, of course, possible for that official by such examination to obtain additional evidence in the prosecution of the pending action; and it may be argued that he is thus endowed with greater power than the ordinary plaintiff in a civil action or even the district attorney in the pursuit of a criminal. But it must be remembered that in the exercise of his broad power the Attorney-General is performing a function for the protection of the public interest and is not compelling any self-incrimination. The larger advantage which he may thus obtain in enjoying the grant "to conduct compulsory investigations and examinations of witnesses to the end that he might be better able to protect the public by enjoining fraudulent practices through the process of civil proceedings authorized by the statute." (*Dunham* v. *Ottinger, supra,* 437), appears to be fully justified by the end. Surely no constitutional rights of third parties are invaded by requiring them for the public good to submit to examinations; and whether or not an action has been commenced against other persons is of no consequence to them; and the statute has now clearly provided that they may not protest against such inquiry under oath because of an action pending with reference to which the examination is sought.

To limit the recent amendment to the examination under sub-

pœnas issued prior to the institution of the action, and returnable thereafter, or to the completion of inquiries begun prior thereto, is to make the amendment needlessly narrow. Its purpose must be gauged by the circumstances which occasioned it. Following so soon upon the determination of the court that the right of subpœna and private inquiry by the Attorney-General was ended upon the commencement of the action, the amendment must be construed to have removed this limitation, at least so far as the examination of third parties is concerned. In the words of Judge CARDOZO — now Chief Judge — in *Lamport* v. *Smedley* (213 N. Y. 82, 86): " The legislature did not have in view a vain and nugatory enactment. It intended to work an important reform in procedure, and its purpose ought not to be thwarted by any narrow construction."

The motion to quash the subpœnas is denied.