NEW YORK STATE ELECTRIC AND GAS CORPORATION, Plaintiff, *v.* MILO R. MALTBIE and Others, Individually, and as the Persons Constituting the Public Service Commission of the State of New York and State Division of the Department of Public Service of Said State of New York, Defendants.

In the Matter of the Application of FREDERICK S. BURROUGHS and Others, Petitioners, against MILO R. MALTBIE and Others, Individually and as the Persons Constituting the Public Service Commission of the State of New York, Respondents.

Supreme Court, Special Term, Albany County, October 12, 1938.

*Edmund B. Naylon* [*Samuel E. Aronowitz* and *George Foster, Jr.*, of counsel], for New York State Electric and Gas Corporation.

*Travis, Brownback & Paxson* [*Edward F. Huber* and *George J. Banigan* of counsel], for the petitioners Frederick S. Burroughs and others.

*Gay H. Brown* [*John T. Ryan* and *Laurence J. Olmstead* of counsel], for the Public Service Commission.

BERGAN, J. On the 22d day of June, 1938, the Public Service Commission made an order instituting an investigation of the New York State Electric and Gas Corporation. In pursuance of this order, subpœnas were issued by one of the Public Service Commissioners on July 25, 1938, directed to several witnesses to appear on September 7, 1938, at the New York office of the Commission to testify " as to the accounts and records, property, practices and transactions of the New York State Electric and Gas Corporation."

The witnesses so subpœnaed have instituted a proceeding against the respondents constituting the Public Service Commission returnable at the Special Term of September ninth to " relieve them of compliance with " the subpœnas served upon them and for an order quashing the subpœnas " until the respondents herein define the scope of the investigation purportedly instituted by their order dated June 22, 1938."

The New York State Electric and Gas Corporation has instituted a suit in equity seeking a permanent injunction against the Public Service Commission restraining it from proceeding with the investigation until the Commission shall have served upon the plaintiff a further order " specifically defining the issues involved and the charges, claims and complaints to be investigated and prescribing the scope of any investigation to be made thereunder." The plaintiff moves for a temporary injunction during the pendency of the action. The defendants, at the Special Term of September twenty-third, move to dismiss the complaint in pursuance of rules 106 and 107 of the Rules of Civil Practice upon the grounds

that the complaint fails to state facts sufficient to constitute a cause of action, and that the relief sought by the complaint is in excess of the jurisdiction of the court. A temporary stay has been granted in the proceeding and in the action until the determination of these motions.

Since the questions raised in the action are closely related to those raised in the proceeding instituted by the witnesses under subpœna, they will be determined together.

The jurisdiction of the court to act within its equity powers to restrain an invasion of constitutional rights and privileges at the instance of one aggrieved by an order of the Public Service Commission in a proper case is undoubted. (*Municipal Gas Co.* v. *Public Service Commission*, 225 N. Y. 89.) The provisions of subdivision 2 of rule 107 of the Rules of Civil Practice, applying to a case in which the court is without jurisdiction of the subject of the action, upon which defendants apparently rely in part in their motion to dismiss the complaint, accordingly, are not pertinent to the cause of action pleaded. This applies likewise to subdivision 2 of rule 106. In the motion under subdivision 5 of that rule, that the complaint does not state facts sufficient to constitute a cause of action, the facts pleaded must be conceded, and every fair inference and intendment adducible from the facts must be accorded to the pleading. The conclusions of law pleaded, and there are several of them set forth in the complaint, are not, of course, so conceded by a party who adopts this mode of attack upon the pleading.

The case, accordingly, turns upon the sufficiency of the order of the Commission of June twenty-second instituting the investigation. The order, in general language, follows the terms of the statute under which the Public Service Commission has undertaken to act. The plaintiff is a public utility within the jurisdiction of the Commission. (Complaint, Paragraph " First.") Each of the several matters specified in its order as defining the scope of its inquiry is within one or another of the express grants of jurisdiction given the Public Service Commission by the Legislature.

The order provides that the investigation shall be made " as to the methods of accounting, the books, records, accounts and other documents of the New York State Electric and Gas Corporation." These matters are each clearly within the powers of the Commission. (Public Service Law, § 66, subds. 4, 5 and 9.) The order further provides that the investigation shall touch upon " the methods, practices, regulations and property employed by said corporation in the transaction of its business." These matters are not only within the jurisdiction of the Commission, but the statute imposes upon it the mandatory duty of examining the plaintiff upon these subjects. (§ 66, subd. 5.) It has no discretion

in the premises. The statute is explicit. It "shall" make the prescribed examination. The order further determines that the Commission shall investigate whether the plaintiff "is failing or omitting or about to fail or omit anything required of it by law or by order of the Commission" or whether it is affirmatively doing any act in violation of law or order of the Commission. Subdivision 5 imposes also upon the Commission the duty of examination as to "violation of any provision of law" and by fair implication this means, too, a violation of any valid order of the Commission. Lastly, the order determines that the investigation shall include inquiry into the "affiliated interests" of the plaintiff, the extent and propriety of transactions with such interests and whether they are "in the public interest." This power likewise falls within the provisions of section 66.

The plaintiff contends that it is entitled to have the scope of the inquiry more definitely fixed than has been done in the general terms of the order, and since the investigation may result in a further order by the Commission affecting the business and property of the plaintiff, that the failure of the Commission more definitely to fix the scope of its investigation results in depriving it of due process of law in the procedure adopted and hence violates its immunities under the Constitution of the United States and of the State.

It is clear that the inquisitorial aspect of the investigation is not in violation of the due process clause. The plaintiff is not deprived of property by the inquiry as such, except as to the expense involved in the investigation, and in this respect, since its business is one closely integrated with the public welfare, and since the investigation is consonant with the legislative policy of the State in the regulation of public utilities, it must yield to the reasonable exercise of public powers of inquiry into its affairs and subordinate its convenience to the valid exercise of such powers.

No precise form of order instituting an inquiry by the Commission is fixed by statute, whether the investigation has as its purpose the marshaling of information pertinent to the Commission's function, or whether it has as its purpose a further order directly affecting the business and property of a utility. This court cannot gratuitously prescribe the form of order to be made or specify what it shall contain in the exercise of a proper legislative function by a co-ordinate branch of the government. The judicial function here, and it is the only one involved, is to see to it that constitutional privileges find proper safeguard.

Upon the argument it was conceded by the Commission that the investigation may, and probably will, result in an order affecting the business and property of the plaintiff. Upon the preliminary

stages of the inquiry certain specifications were read into the record amplifying the scope of the investigation provided by the order. This was by an assistant counsel to the Commission. The specification was neither conclusive upon the Commission, nor, by its express terms did it include all the matters into which inquiry might be made. If the inquiry is conducted within the scope of the specifications so made, even if when made, they were not fully binding upon the Commission, there would probably be ample notice to the plaintiff of the scope of the investigation, both as to the relevancy of the proof adduced and as to a reasonable opportunity to meet it. If the inquiry follows that line, plaintiff will be afforded procedural due process. If it exceeds the specifications, or, if without reasonable further specification in sufficient time to afford a full opportunity to insist upon limitation to relevant matters and a full opportunity to meet and answer the questions presented, the plaintiff may, if it is aggrieved by the result reached, have been deprived of due process of law.

In either aspect, however, I think the facts pleaded do not presently require equitable intervention to interfere with the exercise of the legislative powers of the Commission. Whether the constitutional privileges of plaintiff are invaded in such manner as to require a judicial decree for their protection must await the ascertainment of what is ultimately done and the procedure by which the ultimate order of the Commission has been reached. Then by appropriate proceedings either to review the ultimate determination or to restrain its enforcement in violation of constitutional immunities, a remedy will be fully available to the plaintiff. No such pressing or immediate need for judicial intervention exists now, or arises from the general nature of the order instituting the investigation. This is especially so, I think, in view of the dual power of the Commission to conduct an investigation to ascertain facts as to matters within its jurisdiction, and an investigation to form the basis of an order affecting the property of a utility. It is not within the judicial power to direct a severance of the means of exercising those powers at the outset of an investigation.

The motion by the plaintiff for an injunction *pendente lite* is denied. The motion by defendants to dismiss the complaint on the ground it does not state facts sufficient to constitute a cause of action is granted.

The proceeding by the witnesses to quash the subpœnas is governed by the same general principles. Their convenience must yield to the exercise of a valid governmental function by the Commission. Their constitutional rights are not invaded when they are required to attend and be examined as witnesses

upon facts within their knowledge in the exercise by the Public Service Commission of the power of inquiry and subpœna expressly conferred upon it by law.

Long ago, Judge VANN, writing for the Court of Appeals, discussed the infringement upon constitutional rights of a witness necessarily incident to the valid exercise of the power of subpœna and inquiry. (*Matter of Davies*, 168 N. Y. 89.) " Organized society requires some sacrifice of personal liberty by its members," he wrote at page 105, " and the Constitution which organized the State government makes liberty subject to due process of law. The ultimate question, therefore, is whether it is due process of law for the State, through its judicial department, to examine a witness in order to see whether his testimony is material and necessary in a judicial proceeding about to be instituted."

A witness will be protected against a " roving course for the purpose of generally prying into " his affairs (*Dunham* v. *Ottinger*, 243 N. Y. 423), and when such a situation is disclosed the remedy would seem to be a proceeding, such as that adopted here, to quash, vacate or modify the subpœna. (*Carlisle* v. *Bennett*, 268 N. Y. 212.) So it has been indicated in respect of a subpœna *duces tecum*. The ultimate test is whether the production of the papers of a witness is sought in a matter having a " reasonable relation to the subject matter under investigation and to the public purpose to be achieved." (*Carlisle* v. *Bennett, supra*, p. 217.) The test of the power to subpœna witnesses and to examine them is a compliance with the purposes and intent of the statute under which the power is exercised. (*Matter of Hirschfield* v. *Craig*, 239 N. Y. 98.) (See, also, *Matter of Edge Ho Holding Corp.*, 256 id. 374.)

The subpœnas served upon the witnesses are not, in form, subpœnas *duces tecum*. But if, upon the basis of the letter from the assistant counsel to the Commission to counsel for the witnesses, outlining the information that will be sought of the witnesses, which information they contend is impossible of being given without the production of their records and books, the subpœnas in effect be deemed to require the production of papers, the result would not be different. The matters specified clearly present a " proper case " within the powers of the Commission to require the production of records and papers. (Public Service Law, § 66.) (See *Matter of Davies, supra; Matter of Hirschfield* v. *Craig, supra*, and *Carlisle* v. *Bennett, supra*.)

The application of petitioners to be relieved from compliance with the subpœnas and to quash the subpœnas is denied.

No costs.

Submit orders.