Henry Epstein, J.
This is a motion to vacate and set aside the ex parte order of a Justice of this court dated December 7, 1960, which directed the examination of the moving parties, their books, papers, etc., by the Attorney-General of the State of New York under section 354 of the General Business Law of this State. The issues raised have been fully argued and briefed. Article 23-A of the General Business Law is more generally *778 known as the Martin Act, this State’s counterpart to the Federal Securities and Exchange Commission (S. E. C.) Act. The aim of the proposed examination of the Attorney-General is conceded to be the suppressing of the publication and further distribution of a book entitled ‘ ‘ How I Made $2,000,000 in the Stock Market ’ ’. The book is purportedly authored by one Nicolas Darvas, a professional dancer, and published by the petitioner American Research Council, Inc., of which petitioner Bernard Mazel is president. At the request of the Attorney-General respondent corporation furnished original cables referred to in the book. Bernard Mazel appeared under subpoena pursuant to section 352 of the General Business Law with documents but refused to be sworn on the ground that his testimony would be under “ testimonial compulsion” and pleaded his constitutional privilege. The prospective injunctive relief envisaged by the Attorney-General must be built upon material obtained in preliminary investigations and examinations.
The issue herein presented arises out of the amendment to the General Business Law (art. 23-A) entitled “Fraudulent Practices in Respect to Stocks, Bonds and Other Securities ”. This amendment was enacted by chapter 961 of the Laws of 1960 and added definitions to section 352 as well as an entirely new section 359-eee. Section 352, before the amendment and now, expressly authorizes the Attorney-General to investigate practices involving a ‘ ‘ course of business relating to * * * investment advice * * . * which is fraudulent ’ ’. The addition of the words “ investment advice ” enlarged the verbiage but query whether it extended the scope of the Attorney-General’s powers — at least to the extent here sought to be exercised. Petitioner American Research Council, Inc., is registered as a professional investment advisor with the Securities and Exchange Commission of the United States. The question here presented is whether the book ‘ ‘ How I Made $2,000,000 in the Stock Market ” is “ investment advice ” by an “ investment advisor ”. The issue is narrowed by the book itself, and not by the advertising ‘ ‘ blurbs ” published, whether by Time Magazine, Barrow’s Financial Reports or petitioner American Research Council, Inc., itself. The distinction must be drawn between ‘ ‘ touting ’ ’ stocks and advising purchasers what to buy on the one hand, and publishing a reported series of transactions by a named investor in the form of a biographic sketch with all the emphasis on the fiscal experiences of the purported author.
An “Investment advisor” is defined by paragraph (a) of subdivision 1 of section 359-eee as “ any person who, for com *779 pensation, engages in the business of advising members of the public, either directly or through publications or writings within or from the state of New York, as to the value of securities or as to the advisability of investing in, purchasing, or selling or holding securities, or who, for compensation and as a part of a regular business issues or promulgates analyses or reports concerning securities to members of the public within or from the state of New York.” There then follows a list of exceptions, those “ not ” included in the definition.
Section 352 of the General Business Law provides: “ Whenever it shall appear to the attorney-general * * * that any person * * * shall have employed, or employs, or is about to employ, any deception,. misrepresentation * * * in any practice or transaction or course of business relating to the * * * investment advice * * * which is fraudulent or in violation of law * * * he may in his discretion either require or permit such person * * * to file with him a statement in writing under oath or otherwise as to all the facts and circumstances concerning the subject matter which he believes it is to the public interest to investigate ”. The power to subpoena witnesses and require production of books, etc., follows in subdivision 2 of section 352.
Who is an “ Investment advisor ” and what is “ investment advice ”? Is every publication which sets forth the successive rises in stock prices which appear in the daily reports of security transactions, both on and off the exchanges, to be termed ‘ ‘ investment advice ” ? Is every such publication, however accurate or fictional, to be regarded as advice, if it in no instance urges the purchase or sale of specific securities ? If in the biography of Bernard Baruch there are specific references to securities which were bought and sold, is the fact that the purported author has become wealthy to be deemed a yardstick for suppressing the book or subjecting author and publisher to Martin Act examination? To what unfathomable depths will this endeavor of the Attorney-General lead us ? Did the Legislature mean to include any publication which describes transactions in securities and which might disclose who dealt in those securities ? Did the Legislature mean to place in the Attorney-General’s power the censorship — power to suppress means that — of publications unrelated to specific stocks or bonds but which espouse certain guiding principles of investment? The court notes the express exception of the publisher of a bona fide newspaper or news magazine by paragraph (4) of subdivision 1 of section 359-eee of the exceptions enumerated in the definition. *780 Therefore the following from a daily newspaper within the past few days is free from restriction:
“ Heard in Wall St.
‘ ‘ G-enesco Inc. ’s new process for making shoes, ‘ magic rim, ’ which will reduce the number of manual and machine steps needed in production, should improve future profit margins.
“Radio Shack Corp., which increased sales to $12.6 million and earnings to more than $1 per share in fiscal 1960, should see another sharp rise in sales and earnings, perhaps as much as 50 percent in the year to end June 30, 1961.
“ Family Finance Corp., which made $2.40 per share in the fiscal year ended June 30, should make about $2.60 per share in the current year.”
Nothing in the book under discussion comes within range of such seemingly patent promotion of the specified stocks. Yet such comment is found daily in any number of publications.
The true definition of the term “Investment adviser” may be found in the legislative records of the precursor and model of section 359-eee of the New York General Business Law. The Federal Investment Advisers Act of 1940 (U. S. Code, tit. 15, § 80b-2, subd. [a], par. [11]) finds expository analysis in the Congressional Record (Cong. Rec., vol. 86 [76th Cong., 3d Sess.], pp. 9809, 9813-9814) in the remarks of Congressman Hinshaw of California and Congressman Cole of Maryland, responsible for the House bill. Like analysis is in the Senate Banking and Currency Committee Report (Senate Bill 4108, the counterpart of H. R. 10065). “ Investment advisers are in the relationship somewhat of a physician to his patient.”
This court has read the book in question with care. Chapter One deals with the losses in cheap and unlisted Canadian mining’ and exploration stocks. Chapter Two explains how transactions in certain listed stocks were also quite unprofitable, despite being conducted through established brokerage houses and on their “ expert ” advices. Only after sad experience does the author finally expound his “ Box Theory ” of fixing a price range and moving his selling price close to the purchase price within that range. All these transactions are in well-known stocks. Whether accurately told or not, the “ round the world ” experiences with daily cabled prices for specific stocks furnish an interesting tale. Cables and charts are in the 16 Appendix ’ ’ to give strength to the purported author’s experiences in the stocks-thus purchased and sold. Surely, the Attorney-General does not believe that the reading public, even avid dabblers in securities,, will travel around the world and try such experiences as are related. The important fact is, however,, that the book does not *781 “ advise ”, does not pretend to foretell advances in stocks. It does describe a method used in specific transactions, actual or fictional, which turned out successfully for the author. I seriously doubt that this is investment “advice” within the reasonable intendment of the Federal or State securities statutes.
One may sympathize with persons who gamble and lose, whether at the races, at the roulette or dice tables of Reno, or on the stock market. No one has yet sought successfully to suppress the newspapers and other publications which carry daily “touting” on the horse races. But this book does not make any such recommendations. It does not warrant the Attorney-General’s using the Martin Act as a means of transport on a roving expedition. (Carlisle v. Bennett, 268 N. Y. 212; Dunham v. Ottinger, 243 N. Y. 423.) Since the Attorney-General confessedly wishes to suppress the book here at issue, his actions constitute an unwarranted invasion of the free press in violation of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the State Constitution. (People ex rel. Kenny v. Adams, 292 N. Y. 65; People v. Steuding, 6 N Y 2d 214.) The popularity of the book— even its possible evil consequences to the gullible “ investor ” who might seek to invent his own method — these do not justify the action of the Attorney-General, however praiseworthy his motivation. The Martin Act, and the new section 359-eee, will be so construed as to preserve its constitutionality. The book here at issue cannot reasonably be termed to be included in the definition of “ investment advice ”. We thus sustain the statute and its definitions but bar actions sought to be taken thereunder which would violate sacred constitutional safeguards. The motion is granted, vacating and setting aside the ex parte order of this court under date of December 7,1960.